MONROE L. SIMON, Respondent, *against* THE ALDINE PUBLISHING COMPANY, Defendant. JAMES SUTTON, Appellant.

(Decided June 6th, 1887.)

One who becomes surety upon an undertaking on appeal, knowing that he is insolvent and with no expectation of paying the liability thus

incurred, is guilty of a contempt of court, in putting in a fictitious surety, and may be punished therefor, although he is not a party to the action.

APPEAL from an order of the General Term of the City Court of New York adjudging the appellant, James Sutton, guilty of contempt of court in becoming a fictitious surety upon an undertaking given on an appeal to the General Term of this court from a judgment of the City Court in favor of plaintiff in the action.

The facts are stated in the opinion.

*Thomas Darlington*, for James Sutton, appellant.

*E. J. Myers*, for respondent.

PER CURIAM. — [Present, LARREMORE, Ch. J., ALLEN and BOOKSTAVER, JJ.] — The contempt charged against the appellant was that he caused and procured a fictitious surety to be put in in this action, to wit, "in that the said James Sutton executed on the 23d of December, 1885, and filed and approved on the 7th day of January, 1886, an undertaking on appeal from the judgment rendered in this action and became a surety thereon, and thereafter justified thereon as a good and sufficient surety, being at the time wholly insufficient and irresponsible to answer the obligation of such undertaking, and false and untrue in the statements and allegations of his estate and property by him possessed and owned at such time." The court below found the offense to be proven, the learned judge at Special Term using the following language in his opinion: " The examination taken under proceedings supplementary to execution herein, before a referee, in which said surety as well as his co-surety and other witnesses testified, and the additional affidavits submitted, satisfy me that some of the statements made by said surety (who was also the president of the defendant corporation) upon his justification as such surety, were not true, and were known to him at the time

to be untrue, and that he was then insolvent with no present means of meeting the obligation into which he had entered as a surety, and with no intention of paying the same." The General Term below say, in their decision : " After a careful review of the facts, we agree with the Special Term that the said surety on the undertaking referred to was fictitious." We concur in the finding of the court below sustaining the charge.

On his justification, January 7th, 1886, Sutton testified that he owned presses and printing material at 40 Nassau Street, worth $10,000, free and clear of any incumbrance ; that he had no outstanding indebtedness further than three or four hundred dollars ; that he was worth $5,000 over and above all debts and liabilities which he owed or had incurred and exclusive of property exempt by law from levy and sale under execution. He also testified upon cross-examination that he owned one-quarter interest in his father's estate, worth from $700 to $1,000 ; household furniture worth about $500 ; six or seven hundred shares of the stock of the Aldine Publishing Company, to which he could assign no value, and a yacht, the value of which he could not give. Notwithstanding the fact that he swore upon the justification that his total indebtedness did not exceed three or four hundred dollars, it appeared upon his examination before the referee in supplemental proceedings, that he was indebted to his wife at that time upon a note made to her in 1883 for $20,000, and to his sister in the sum of $1,500 upon a note. According to his testimony all the property he owned in December, 1885, was the property he purchased from his wife for which he gave her the note of $20,000, one-quarter interest in his father's estate worth from $700 to $1,000, household furniture worth about $500, stock of the Aldine Publishing Company, and a yacht. Now, Esther Sutton, his sister, swears positively that his interest in his father's estate was sold to her before Christmas of 1885 for $1,500 in cash. As to the $500 worth of household furniture, he swears in his examination that he claimed an interest in household furniture in January, 1886, to about the extent

of $500. If he were the absolute owner of household furniture to the amount of $500, as he was a householder, a part of it would be exempt from levy and sale under execution. But his examination shows that Mrs. Sutton also claimed the furniture, or a part of it. The Aldine Publishing Company's stock does not appear to have any value, and was held under an option, under which it was afterwards surrendered. The yacht which he claimed to own was, according to the testimony of Charles Sutton, built by Mr. Plant for Mrs. Sutton, pursuant to a contract with her, and paid for by her: and Charles Sutton testifies that the yacht belongs to his mother, and he never knew of his father having any interest or ownership in it; and James Sutton swears that Mrs. Sutton claimed that she had given it to the son Charles.

If Sutton was indebted to his wife at the date of the justification in the sum of $20,000 upon his note, there could be no question as to his insolvency. The appellant sought to dispose of the liability upon this note in two ways: First, his wife in an affidavit submitted by her says that, in January, 1885, she bargained and agreed with said James Sutton for a valuable consideration to release and discharge said Sutton from all personal liability on account of said note or the debt which it represented; that she executed and delivered to said Sutton a writing to that effect, and removed the words "value received" from said note for the purpose of destroying its negotiability. The writing spoken of has not been produced, and no reason given why it is not produced. We are compelled to say, as the proof stands, we do not think this claim is consistent with reasonable probability; and, whatever may be the condition of things now, or whatever it may have been at the examination before the referee, we believe that Mr. Sutton, at the time of the justification, was indebted to his wife upon this note, if not in the full amount of it, at least in a large sum.

Second. Mr. Sutton in his examination has repeatedly admitted an indebtedness to his wife upon this note, and acknowledges that he owes her now on account of it $5,000

or $6,000; but he claims that he had reduced the note in December, 1885, by selling to his wife for $10,000 part of the property which had been sold by her to him for $20,000, which $10,000 was credited on the $20,000 note. What property was sold to her does not appear, nor is the bill of sale, which he says he gave to her, produced. But he has sworn in his examination that the value of all the property which he bought from her and for which he gave her the $20,000 was $10,000. Conceding this sale was made, there still remained due upon the note the sum of $10,000; and if it be true that Mrs. Sutton was indebted to him at the time of the justification in the sum of $2,769.43, as he claims, there would still be due upon the note, at the time of the justification, the sum of $7,230.57; for the $2,000 bill of sale was made after the justification. This, together with the indebtedness to his sister, is more than the value of the property he claimed to be the owner of at No. 40 Vesey Street, as shown by the prices received for it when he turned it over within two months after the justification in payment of notes of the Aldine Publishing Company upon which he was indorser.

We consider the case against Mr. Sutton made out, that he became surety knowing that he was insolvent and with no expectation of paying the liability thus incurred.

This court has decided that the power to punish a surety for contempt exists, although he is not a party to the action (*Hull* v. *L'Eplatinier*, 5 Daly 534; *Nathans* v. *Hope*, 5 Civ. Pro. 401). The Superior Court has also so decided (*Eagan* v. *Lynch*, 3 Civ. Pro. 236). The case of *Nathans* v. *Hope* went to the Court of Appeals and was reversed there, not upon the question of power, but on the insufficiency of the proofs.

The learned judge at the Special Term in his opinion has stated that it seemed to him that the principles laid down in *Hull* v. *L'Eplatinier* (*supra*), had been overruled by *Moffatt* v. *Herrmann* (17 Abb. N. Cas. 107). The case referred to in no way affected or changed the doctrine of *Hull* v. *L'Eplatinier*. On the argument of the appeal in

*Moffatt* v. *Herrmann* we reversed the order appealed from for reasons that seemed to us so palpable that we thought a detailed statement of them in writing was unnecessary. The City Court attempted to punish Herrmann for disposing of his property after Moffatt had impleaded him in an action in that court. It is true that the City Court supposed that they were punishing Herrmann for contempt in putting in a sham answer, but what was actually done was to convict Herrmann of disposing of his property *pendente lite*, and then to impose upon him a fine equal to the amount of Moffatt's judgment. Assuming — which we cannot concede — that the filing of a sham answer is a contempt of court, and that the court could lawfully compel a defendant to compensate his adversary for the loss which he had suffered through the misconduct complained of, the question arises, What is the loss that the interposing of a sham answer occasions? The answer is obvious; if the plaintiff be delayed, he loses the interest upon his demand for the period of the delay. If by his sham answer Herrmann kept Moffatt out of his money, or out of the judgment to which the latter was entitled, from the 2d to the 20th of March, the law could and would give no other redress than to impose the lawful interest for that time. But it was alleged that Herrmann had done something more than delay Moffatt: he had taken advantage of that delay to place his property beyond the reach of an execution; and this was the act that the City Court undertook to punish as a contempt of court. Now when and where before did anybody ever hear, that, where a plaintiff brought an ordinary action on a promissory note, the defendant committed a contempt of court by parting with his property whilst the litigation was pending? Herrmann's disposal of his property was an act distinct from and independent of the filing of his answer. If it be a contempt to file a sham answer, the offense is complete when the answer is interposed; if after the commission of that offense Herrmann went on to do another improper act, the City Court assumed that the latter act must needs be a part of the offense

Simon *v.* Aldine Publishing Co.

that is to be punished as a contempt. Suppose that, after gaining time by filing a sham answer, Herrmann had succeeded in stealing the note in suit, or that he had fraudulently disabled a witness for the plaintiff from attending or from testifying, would any one contend that such conduct could be punished as part of the offense of interposing a sham answer? But Herrmann had, as it appears, sold his property before he filed his answer. The answer was interposed on the 2d of March, and on the previous day, the 1st of March, he had conveyed his property to the Hirsch & Herrmann Brewing Co.; he received in payment stock of the company of the par value of $100,000, and a large part of that stock he used in securing his creditors. The residue he gave as collateral security to his wife for an alleged debt of hers, the honesty of which the City Court doubted. Exactly why the court entertained suspicions as to the *bona fides* of the wife's claim does not appear, but her right could not be summarily disposed of on a motion to punish her husband for contempt; if her claim were honest, the singular spectacle would be presented of sending Herrmann to jail for contempt because he exercised the undoubted lawful right of applying his property to the securing of his creditors, when no injunction or receivership or order deprived him of the control of his affairs. And for this extraordinary order the court had no other authority than the observation of an English judge that perjury, when committed in the presence of a court, is a grave contempt. It was always the rule that pleadings should be true (Chitty Plead. Marg. p. 541 *et seq.;* Stephen Plead. Marg. p. 441). But no one ever heard of treating the interposing of a sham answer as a contempt. Subdivision 8 of section 14 of the Code did not therefore apply to the case; nor did subdivision 2 of that section apply, for that subdivision merely relates to " putting in fictitious bail or to any deceit or abuse of a mandate or proceeding of the court." The word " proceeding" here means something issuing from the court itself. There was no ground upon which

the order adjudging Herrmann guilty of contempt could be supported.

The order of the General Term should be affirmed, with costs.

Order affirmed, with costs.