(9 Misc. Rep. 171.)

### In re HOPPER.

### In re UPDIKE.

(Common Pleas of New York City and County, General Term. June 27, 1894.)

CONTEMPT—FALSE AFFIDAVIT—JUSTIFICATION.

    A surety on a bond for the discharge of mechanics' liens who makes a false affidavit of justification is guilty of a contempt of court.

Appeal from special term.

Petition by John J. Hopper to punish Edwin S. Updike, Sr., for contempt of court. The petition was denied, and petitioner appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Carpenter & Hassett, for appellant.

David McClure and Henry B. Weselman, for respondent Updike.

BISCHOFF, J. The petitioner, John J. Hopper, was the lienor named in a notice claiming a lien pursuant to the provisions of the mechanics' lien law (chapter 342, Laws 1885), which notice was filed as by statute is for such cases made and provided. The lienees, intending to secure the discharge of the lien upon giving security as provided by subdivision 6 of section 24 of the mechanics' lien law, caused the lienor to be served with a copy of the proposed bond and notice to the effect that the sureties would appear, at a time specified, before the court, for examination with regard to their sufficiency. Relying upon the truth of the formal affidavit of sufficiency made by each of the sureties, and indorsed on the bond, to the effect that the affiant was at the time a freeholder within the state, and worth double the amount of the penalty over and above all debts and liabilities and property exempt by law from execution, the lienor's attorney waived further examination of the sureties, and approved the bond. The court thereupon also approved the bond, and by its order directed that the lien be discharged. Pursuant to the directions of the order the lien was in fact discharged. Subsequently the lienor recovered judgment in an action brought to foreclose the lien. The judgment remaining unpaid, the lienor next recovered judgment upon the bond against the sureties. Supplementary proceedings in aid of an execution against the property of Edwin S. Updike, Sr., one of the sureties, developed that he was then worthless. These proceedings were then instituted against Updike to punish him for his misconduct in having, by means of his willful misrepresentation of the substance of his formal affidavit of justification, imposed upon the court, and thus induced it to direct the discharge of the lien, to the petitioner's injury. On the hearing it transpired, as stated, that the petitioner had not availed himself

of the opportunity afforded for the particular examination of the sureties with regard to their sufficiency before the approval of the bond; that the surety proceeded against actually held the record title to several pieces of real property situated in the city of New York at the time he tendered himself as such surety, and that the petitioner, prior to the institution of these proceedings, and after the surety's examination in supplementary proceedings, had brought two actions in the superior court to set aside certain conveyances, made by the surety subsequent to the signing of the bond, as fraudulent respecting the creditors of the grantor, which actions were pending and undetermined. For these reasons the learned judge at special term dismissed the proceedings. The bond given upon the discharge of the lien was in the penalty of $1,300, and, from Updike's sworn testimony as a judgment debtor, it appears that his formal affidavit of sufficiency as surety was unqualifiedly false and perjurious. He most explicitly admitted that his ownership of the several pieces of real property, excepting the premises Nos. 12 to 22 East 106th street, the title to which was in him when he qualified as surety, was wholly nominal, and that he had since conveyed them as directed by the actual owners. With regard to the 106th street property, he stated that his interest therein was only to the extent of one-fifth of its value over and above the cost of construction; that the estimated cost of construction was $159,000, the actual cost $180,000, and its value not above the last-mentioned sum. He further admitted that at or about the time he tendered himself as surety he was indebted to his daughter-in-law, Fannie M. Updike, in the sum of $5,000, and that his personal property at the same time did not exceed $200. Accepting, now, the cost of the 106th street houses at $159,000, and their value at $180,000, Updike's interest in the excess of value above the cost was not over $4,200. Adding to the last-mentioned amount the value of his personal property, without deduction, the aggregate amount of property owned by Updyke when he offered himself as surety was $4,400. Deducting from the last-mentioned sum his indebtedness to his son's wife, $5,000, it is apparent that, after giving him the benefit of the most favorable construction of his testimony, Updyke was actually insolvent when he persuaded the court to accept him as a sufficient surety for $1,300, and that he swore falsely when he stated, under oath, that he was worth double that sum above all debts and liabilities and property exempt by law from levy and sale under execution.

That the imposition so successfully practiced by Updike constitutes a contempt of court for which the petitioner is entitled to redress to the extent of the injury inflicted upon him is a proposition so well supported as to be no longer debatable. Simon v. Publishing Co., 14 Daly, 279; Lawrence v. Harrington, 63 Hun, 196, 17 N. Y. Supp. 649; Foley v. Stone (Sup.) 9 N. Y. Supp. 194; People v. Court of Oyer & Terminer, 101 N. Y. 245, 4 N. E. 259; King v. Barnes, 113 N. Y. 476, 21 N. E. 182. Nor does the neglect of the petitioner's attorney to avail himself of the opportunity to inquire into the particulars of the surety's sufficiency assuage in any degree the lat-

ter's outrageous and criminal conduct. The fact remains that he knowingly and deliberately carried his attempted imposition upon the court into successful execution, and by fraudulent means secured the order which deprived the petitioner of his security. That the petitioner and his attorney, unwilling unnecessarily to tax the endurance of the court and to delay the discharge of its duties in other respects by what seemed to them a needless examination, in good faith, and unwary of the attempted perpetration of the fraud, approved the bond, and by that means facilitated the fraud, does not palliate the offense. Nor is the apparent inconsistency of the petitioner in prosecuting these proceedings and the superior court actions at one and the same time available as a means of exonerating the offender. The offense was one against the dignity of the court, which it was neither the province of the petitioner nor his right to compromise or condone. It is owing to the court that the offense should not go unpunished, if for no other reason than to deter others from the commission of like acts. If the actions brought to set aside the alleged fraudulent conveyances had been prosecuted to success, that fact might have afforded a refutation of the present charge. We are not permitted to indulge a presumption that the conveyances were fraudulently made. As it is, the offense is not only not denied but substantially conceded. If reparation for the injury inflicted upon the petitioner by the loss of his security had been made in whole or in part, that fact would have been entitled to consideration in determining the measure of the redress to be awarded to the petitioner and be exacted of the offender by way of punishment to be imposed. The order of the special term is reversed, with costs, and the prayer of the petitioner is granted, with costs. Edwin S. Updike, Sr., is adjudged guilty of a contempt of court, and fined in the amount of the judgment recovered against him, with the costs and expenses of the supplementary proceedings, of these proceedings, and the costs of the appeal, besides $100 for the fees of the petitioner's attorney. The order hereon must be settled on notice.

BOOKSTAVER, J., concurs.

PRYOR, J. (concurring). It was the privilege, but not the duty, of the claimant to examine the surety as to his sufficiency. He had a right to rely on the surety's sworn statement of his pecuniary resources; indeed, such statement was enough to quiet apprehension and remove suspicion. A party "has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him; and he is under no obligation to investigate and verify statements to the truth of which the other party has deliberately pledged his faith." Mead v. Bunn, 32 N. Y. 275, 280. A fortiori, when the statement relied on is attested by oath and prescribed by law for the satisfaction of the party reposing upon it. The proceedings supposed to be inconsistent are not mutually exclusive within the principle of the doctrine of election of remedies. "A plaintiff is entitled to all the

remedies provided by law for the collection of his debt." Bank v. Bonney, 101 N. Y. 173, 175, 4 N. E. 332. I concur with the opinion of Judge BISCHOFF.