(13 Misc. Rep. 79.)

### McAVENEY v. BRUSH et al.

(Common Pleas of New York City and County, General Term.   June 3, 1895.)

CONTEMPT—BOND TO DISCHARGE MECHANIC'S LIEN.

Giving a bond with fictitious and insufficient sureties to discharge a mechanic's lien is punishable as a contempt of court.

Appeal from special term.

Action by David McAveney against Thomas H. Brush and others. From an order denying a motion to punish defendant Thomas H. Brush for contempt, plaintiff appeals.     Reversed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Welch & Daniels (George S. Daniels, of counsel), for appellant. John Brush (Hector M. Hitchings, of counsel), for respondents.

DALY, C. J.   The plaintiff applied at the special term to punish the defendant Thomas H. Brush for contempt for his misconduct in putting in, or causing to be put in, fictitious and insufficient sureties upon an undertaking dated November 15, 1892, given to discharge a mechanic's lien filed by the plaintiff on the 5th day of November, 1892, for $6,910, on property on the south side of Sixty-Third street between Columbus avenue and the Boulevard in the city of New York; and also for causing and procuring said sureties to put in false affidavits regarding their sufficiency, and for the deceit and abuse of the proceedings of this court on discharging said mechanic's lien.   The application is made in this action, which is brought for the foreclosure of the said lien, and is still pending, being on trial before a referee, to whom all the issues in the action were referred. It is contended by the defendant Brush that, as the lienor has not yet established his right to a lien and to a judgment of foreclosure, no right or remedy can be adjudged to have been affected within the provisions of the Code, which restricts the power of the court to punish for misconduct to cases in which the right or remedy of a party to a civil action or special proceeding pending in the court may be defeated, impaired, or prejudiced.   It is not alone a right of the lienor in his action of foreclosure which is affected injuriously by the discharge of a lien upon a worthless bond.   The discharge of the lien is itself a proceeding under the mechanic's lien act, and it is the lienor's right and remedy in that proceeding which are also defeated by the giving of the worthless bond.   The lien act prescribes a direction by the court, on the application of the owner of the premises, or the person against whom the notice of lien is filed, fixing the amount of the bond, which shall not be less than the amount claimed in the lien, and for the execution of said bond with two or more sufficient sureties, who shall be freeholders, conditioned for the payment of any judgment which may be rendered against the property.   It is also prescribed that the sureties must justify in at least double the sum named in the bond, and that a copy of the bond, with notice that the sureties will justify before the court or a judge thereof at the time and place therein named, not less than five days there-

after, must be served on the claimant or his attorney; and an order, discharging the lien may be made by the court or a judge thereof upon the approval of the said bond. Mechanic's Lien Act of 1885, c. 342, § 24, subd. 6. The party instituting the proceeding for the discharge of the lien has a right to such discharge upon giving of the proper bond with sufficient sureties, and the right of the lienor whose bond is so discharged is to have a proper bond with sufficient sureties. The bond is to take the place of the property, and the law contemplates substantial security to the lienor. When such bond is given, the validity of the lien is assumed, and the right of the lienor to complete security in place of the land is unquestionable. He is as much entitled to sufficient sureties as he is to a proper form of bond; and it follows that to offer fictitious sureties is to completely defeat his right in that proceeding, and he is entitled to immediate redress, and to all the remedies enforceable by the proceedings for a contempt.

In this case the defendant Thomas H. Brush, the owner of the premises, and liable personally for the plaintiff's claim, instituted the proceeding to discontinue the lien by the giving of a bond in the penal sum of $8,000 with two sureties, viz. Mrs. Eliza A. Brush, his mother, and one Charles F. Averill, who respectively justified in affidavits stating that they were each a resident and freeholder within the state, and worth the sum of $16,000 over and above all their debts and liabilities. The said sureties justified before the court upon notice. Mrs. Brush claimed to be the owner of premises 155 Lafayette avenue in the city of Brooklyn, which she said were worth $40,000, subject to a mortgage of $13,000, and which were purchased by her 17 or 18 years before, from one Barber, for about $29,000. Averill swore that he owned 365 Lafayette avenue in the city of Brooklyn; that it was worth $40,000, and was subject to a mortgage for $20,000; that he also owned 349 and 351 Lafayette avenue in said city, worth $40,000, and subject to a mortgage of $20,000; and owned real estate, without incumbrances, situated at Massepequa, L. I., worth $8,000; and that the Lafayette avenue properties were conveyed to him on November 5, 1892, by the defendant Brush, a portion of the consideration being in trade and $13,000 in cash. The plaintiff's lien was discharged by an order of the court upon the approval of the above bond, and the only recourse of the plaintiff was then against the sureties upon the bond, which took the place of the property. It now appears that the surety Averill is wholly insufficient; that he is not worth the amount of the bond instead of being worth double its penalty; and the plaintiff claims that such was the condition of both sureties at the time of their justification; that Brush knew it, and offered them as sureties for the purpose of depriving plaintiff of his lien, and of any security in place thereof. The facts disclosed by the proofs show that the plaintiff has actually been deprived of his right to his lien and of his remedies by the insufficiency of at least one of the sureties, and the evidence tends to support his claim that the condition of such surety was no better on November 21, 1892, when he justified, than it is at present. It appears that Mrs. Brush owned 155 Lafayette avenue, but that it was

conveyed to her by her son, and not by Barber, and the considera-
tion was $20,000, and not $29,000.   It appears that in less than a year
after she justified as surety she conveyed the property to her sister,
in order to have a change of mortgages upon it, and that the mort-
gage incumbrances were increased from $13,000 to $17,100, and then
the property was conveyed back to her.   There are experts who
swear that the value of this property is from $30,000 to $31,000.
It appears that the surety Averill has absolutely nothing to show
for the $48,000 equity in his several pieces of real estate upon which
he justified upon November 21, 1892.   He swore that 365 Lafayette
avenue, mortgaged for $20,000, was worth $40,000.   The mortgage
was foreclosed, and it was sold on February 21, 1894, for $14,000.
He swore that Nos. 349 and 351, mortgaged for $20,000, were worth
$40,000.   The mortgage was foreclosed, and they were sold in Feb-
ruary, 1894, for $19,000.   It also appears that the deed or deeds to him
from Brush, by which he acquired said property, were never placed
upon record.   It appears that the Massepequa property was conveyed
by the company, of which defendant Brush was the president, to
him, for the nominal consideration of $1, and that 10 days after his
justification he conveyed it to his wife for the consideration of
$4,800.   Judgments for deficiency against him upon the mortgage
foreclosures have been entered, and execution against him upon
another judgment has been returned unsatisfied.   Real-estate ex-
perts called by defendants testified that there has been a shrinkage
of values in Brooklyn of 15 to 20 per cent. since the time of Averill's
justification, but this does not explain the difference of 50 to 60 per
cent. between the values as sworn to by him and the amounts the
premises brought on foreclosure.

While every indulgence should be extended to sureties in the
matter of honest opinions as to the value of their properties, it ap-
pears in the case of Averill that he was a worthless surety.   All the
property he appears to have had was conveyed to him by Brush imme-
diately before the justification, and evidently for the purpose of justi-
fying upon it; and it is manifest that Brush was well aware of his
condition, and of the value of said property.   Under these circum-
stances, it would seem that the lienor, in a proper proceeding, is enti-
tled to have the defendant Brush adjudged in contempt for putting in
an insufficient surety, and that the amount of the fine to be inflicted
upon him should be such as to restore or protect the rights of the
lienor which have been prejudiced by such misconduct.   I regard it
as within the power of the court to require a party who has put
in a fictitious surety to pay into court a sum equal to the amount of
the bond, to be held for the benefit of the lienor in case of his even-
tual recovery in the action.   The Code (section 2284) prescribes that,
if actual loss or injury has been produced to a party by the mis-
conduct proved, a fine sufficient to indemnify him may be imposed,
collected, and paid over to the aggrieved party under the direction
of the court.   The actual loss or injury to the lienor is the discharge
of his lien by the giving of the worthless bond, or a bond with a
worthless surety, and the only fine sufficient to indemnify him must
be one equal to the surety afforded by a good bond and a good

surety.   In Cunningham v. Hatch, 3 Misc. Rep. 101, 22 N. Y. Supp. 701, a mechanic's lien was discharged, after suit brought, by a deposit with the county clerk under the same section of the mechanic's lien act (subdivision 3).   A default was taken in the action, and the deposit with the county clerk withdrawn.   The default was opened, and the judgment entered thereon vacated, and an order made requiring the defendant withdrawing the deposit to deposit the same with the county clerk; and it was held that the court had power to compel obedience to its order by proceedings for contempt.   In every case where the party giving a bond or making a deposit to discharge a lien is guilty of that misconduct which deprives the lienor of his security, the latter has the right to invoke the power of the court to make the security good.   In the case of a fictitious surety it can only be done by imposing a fine to the amount of the bond.   The fine, when collected, will be paid into court, and used to satisfy any judgment which the lienor may recover in his action to enforce his lien.   If he is defeated in the action, the money will be repaid to the party from whom it was collected.   The provisions of the Code above cited (section 2284) provide for such a case by directing that the fine be collected and paid to the aggrieved party under the direction of the court.   The order appealed from is reversed, and the defendant Thomas Brush adjudged in contempt for misconduct in having put in fictitious and insufficient surety, and for the abuse of the proceeding of the court in reference to the discharge of the plaintiff's lien; and a fine of $8,000, the amount of the bond, is imposed upon him for such misconduct, such amount to be collected and paid into court subject to the order of the court in this action.   All concur.