(25 Civ. Proc. R. 116; 14 Misc. Rep. 592.)

FROMME et al. v. GRAY.

(Common Pleas of New York City and County, General Term. December 16, 1895.)

CONTEMPT—INTERPOSING FALSE ANSWER.

The knowingly interposing of a false answer is not a contempt of court, for which a party may be punished in a civil proceeding.

(Syllabus by the Court.)

Appeal from city court, general term.

Action by Herman Fromme and Abraham Fromme against William E. Gray and another. From an order of the city court affirming

an order adjudging defendant William E. Gray guilty of contempt of court, and fining him $2,154.13, and condemning him to close custody until he shall pay the said sum, with interest and costs, said William E. Gray appeals.    Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Wm. B. Hornblower and Frederick M. Littlefield, for appellant.
Fromme Bros. and Jacob Fromme, for respondents.

PRYOR, J.    Failing to secure satisfaction of a judgment by the ordinary processes, plaintiffs seek to enforce it by proceeding as for a contempt committed by the defendant in interposing a false answer in the action; and the question for determination is whether, for perjury in verifying a pleading, a party be guilty of contempt of court. The proceeding is obviously as a civil remedy (People v. Court of Oyer & Terminer, 101 N. Y. 245, 247, 4 N. E. 259); and it purports to go upon subdivision 2, § 14, of the Code, which denounces as a contempt "any deceit or abuse of a mandate or proceeding of the court."    That a pleading is not a "mandate of the court" is too plain a proposition to require argument in its support.    And, if a proceeding in court, it is certainly not a "proceeding of the court."    A pleading is purely the act of the party, in which he proffers to his adversary a statement of his claim or defense, and to which no order or sanction of court is requisite.    Though infected with perjury, therefore, it involves no abuse of the mandate or proceeding of the court.    The statute stigmatizes "any deceit" as a contempt.    Deceit in what?    Manifestly, deceit upon the court in procuring its mandate or process.    But how can there be deceit upon the court in respect of a matter in which the court has no agency?    How can there be deceit in procuring from the court that which does not issue from the court,—that which the court can neither allow nor withhold?    The fundamental and essential principle of a contempt is an affront to the authority of the court (In re Chiles, 22 Wall. 157, 168); but a false pleading nowise challenges or disparages that authority, no more than perjured testimony on the trial.    The provision of the Code under consideration specifies the "putting in fictitious bail or a fictitious surety" as a contempt, but omits to characterize a false pleading as such offense.    By what authority may the court, by construction, supplement defective legislation of a penal nature?    "A penal statute cannot be extended by implication or construction to cases within the mischief if they are not at the same time within the terms of the act, fairly and reasonably interpreted."    Cheese Co. v. Murtaugh, 50 N. Y. 314.    And this stringency of construction is all the more applicable to an offense to conviction of which neither an indictment nor the verdict of a jury nor common-law evidence is necessary,—in a trial for which the accused is not confronted with the witnesses against him, nor allowed the inestimable privilege of cross-examination, nor protected by any of the legal safeguards of criminal justice, and upon sentence for which he may be confined in close custody for an indefinite period. Code, § 2285; Watson v. Nelson, 69 N. Y. 536, 544,    For what, too, is it proposed so to extend the scope and operation of this statute?

Not to vindicate the dignity of the court, nor to chastise an offense against the public; but to enable a private suitor, by a criminal proceeding, to collect a debt for enforcement of which the law already supplies him with civil processes of adequate efficacy.

Imprisonment for debt is the relic of a barbarous age, and is repugnant to the liberal and enlightened spirit prevalent at this day and in this country. Recent enactments restricting the right of arrest and detention in civil actions attest the policy of this state in prohibiting deprivation of liberty as an expedient for the enforcement of civil remedies; and "it would be improper for the court to evade the object and intent of the statute by resorting to an attachment for contempt * * * in a case where the legislature has prohibited imprisonment by execution." Walworth, Ch., in Hosack v. Rogers, 11 Paige, 603, 605. In the interpretation of a statute, the consequences of a particular construction are a matter for consideration. Bishop, Writ. Laws, §§ 82, 93. If the contention of the respondents is to prevail, oppression and injustice to the citizen are obvious and inevitable. Whenever, by the verdict of a jury, the untruth of an answer is ascertained, it will be open to a plaintiff, unable to enforce his judgment by the ordinary processes provided by law, to have recourse to the sharp and severe redress of commitment for contempt; and we may be sure that those processes will be superseded by this more peremptory and efficacious procedure. Thus, notwithstanding the nominal abolition of imprisonment for debt, our jails will be replenished with debtors under commitment for contempt. Abundant authority requires a strict construction of the statute of contempts. "There exists no undefined power authorizing the commitment of citizens for contempt in cases defined and limited by statute." Sherwin v. People, 100 N. Y. 351, 358, 3 N. E. 465. "The power which courts possess of punishing for contempts is, in its nature, an exception to the provisions of the constitution. It is a power to deprive a man of his liberty, without a jury and without a regular trial. It cannot therefore be extended, in the least degree, beyond the limits which have been imposed by statute. No implication, and no fancied necessity, can be permitted to add to the literal meaning of the words by which the legislature has restricted this power." Learned, P. J., in Rutherford v. Holmes, 5 Hun, 317, 319, affirmed 66 N. Y. 368. "It is only in cases which have been prescribed by the legislature as proper subjects for such punishment that it can be imposed upon an offender. While the misconduct of the relator well deserved adequate punishment, as long as it is not within the provisions of law declaratory of cases of willful contempt it could not be made the subject of punishment." Daniels, J., in People v. Court of Oyer & Terminer, 36 Hun, 277, 283. "The absence of such a power from these sections [in the present case, to punish for a false answer] is a very cogent indication that it was not designed to be possessed by the court." Jacquin v. Jacquin, 36 Hun, 378, 380. Process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt. Paving Co. v. Molitor, 113 U. S. 609, 618, 5 Sup. Ct. 618.

It is contended, however, that the point in dispute is already adjudged, and that we are precluded by stare decisis from a reversal of the order. If, indeed, we be concluded by authority, there is at once an end of the controversy. In support of their position, the respondents adduce Cantine Co. v. Warshauer, 7 Misc. Rep. 412, 28 N. Y. Supp. 139,—an explicit adjudication in their favor. But it was a special term decision, and, though by a judge of high repute, is not of controlling authority in this court. The conclusion is supported by no argument, but rests only upon the assumption that "a pleading is a proceeding of the court,"—a postulate which, for reasons already given, we are unable to concede. Koehler v. Campbell (Sup. Ct.) 36 N. Y. Supp. 1110, is another determination to the same effect; but this, too, is a ruling at special term, and stands, moreover, upon no other ground than the authority of Cantine Co. v. Warshauer, supra. The only other precedent on which the respondents rely is the case In re Hall (Sup.) 32 N. Y. Supp. 883; but while this is an adjudication at general term, and so of persuasive influence, it is not of imperative obligation upon a tribunal of co-ordinate jurisdiction; and, as the court bases its conclusion upon neither argument nor authority, we cannot yield our reasoned conviction to a mere ipse dixit. On the other hand, this court, in two deliverances at general term, has deliberately declared that the interposition of a sham answer is not a contempt. Moffatt v. Herman, 17 Abb. N. C. 107; Simon v. Publishing Co., 14 Daly, 279. True, the first decision (Moffatt v. Herman) was without an opinion; and hence respondents argue that it is not an adjudication of the point in controversy. But the headnote states otherwise; and the court of appeals, on review of the case, said that the court of first instance did determine a sham answer to be a civil contempt. 116 N. Y. 131, 133, 22 N. E. 287. The second case, too (Simon v. Publishing Co.), is challenged as mere obiter. Conceding that in neither of these cases was the point in controversy expressly decided, still, upon reconsideration of the question, we are confirmed in the conclusion twice announced by us.

In compliance with the genius of the American institutions, every intendment and implication, not manifestly inadmissible, must be indulged in favor of the liberty of the citizen; and we are unwilling, upon a strained construction of a statute, to detain the defendant in jail for an indefinite time, in order that, by such constraint, he may be compelled to discharge a civil liability.

Order reversed, and defendant discharged, with costs and disbursements. All concur.