## In re HAY FOUNDRY & IRON WORKS.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. CONTEMPT—FICTITIOUS SURETY.
  In order to procure the release of certain property from a mechanic's lien, a bond was given, upon which respondent was a surety. In justifying, he swore that he owned a building worth $75,000 or more above a mortgage. In reality, it had been conveyed to him without consideration; and after executing the bond he transferred it, in turn, without consideration,—his grantee being the person for whose benefit he executed the bond, and by whom he was employed. Respondent was entirely irresponsible. *Held*, that he was a party to a scheme to defraud by offering himself as a fictitious surety, and was guilty of contempt, under Code Civ. Proc. § 14, subd. 2.

2. SUPREME COURT—JURISDICTION—CONTEMPT.
  The fact that a fraudulent proceeding to release certain premises from a mechanic's lien was in the superior court of the city of New York,

which was abolished by Const. N. Y. art. 6, § 5, does not deprive the supreme court of the power to punish for contempt a party to that fraud.

**3. CONTEMPT—LAPSE OF TIME.**

There is no provision limiting the power of the supreme court to punish for contempt because of a lapse of time since the commission of the contempt.

**4. SAME—PUNISHMENT.**

A person found guilty of contempt in executing as surety a false, fraudulent, and worthless bond, to secure the release of a mechanic's lien, may, under Code Civ. Proc. §§ 2281, 2285, be fined the amount of the mechanic's lien, with the costs of the contempt proceeding.

Appeal from special term.

Application by the Hay Foundry & Iron Works to punish William J. Purdy as for a contempt. From an order denying the application, petitioner appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Nelson Zabriskie, for appellant.

J. Baldwin Hands, for respondent.

INGRAHAM, J. The facts presented upon this application make it quite clear that the proceeding to procure the release of the property covered by the mechanic's lien, upon Amsterdam avenue, and the giving of the bond to secure the release of such lien, was a scheme devised for the purpose of transferring the lien from the property to two irresponsible sureties, thus relieving the real owner of the property from the burden of paying the lien; and to that scheme this respondent was a party. The respondent justified as a surety by claiming to be the owner of certain premises in Wooster street, upon which a building was then in course of construction. The justification was in September, 1894. The witness swore that he had owned the property since the previous March, and that it was worth $225,000, but that there was a mortgage upon the property for $136,000, which, upon the completion of the building, was to be increased to $150,000. The respondent also swore that he owned a lot on Eagle avenue, in the city of New York, worth $3,000, subject to a mortgage of $1,000. Before the judgment upon this bond was obtained against him, this lot had disappeared, and no explanation is given as to what had become of it. Upon his examination in supplementary proceedings he testified that he had purchased this real estate in Wooster street in the March previous to his executing the undertaking; that he had paid no money for it at the time, but had simply given a mortgage against it for $95.000. He further testified that in October, 1894, the month after he signed this justification in which he swore that the property was finished and was worth $225,000, he conveyed the lot to one Flora Sawyer without any consideration, except that she agreed to assume the payment of the debts on the property. Thus, about a month after he swore that the property in Wooster street was worth $225,000, he conveyed it without receiving any other consideration for it, and conveyed it to the one who had acquired the title to the Amsterdam avenue property, upon which was the lien that was discharged by his

giving the bond. His future relation to this Amsterdam avenue property is also quite instructive. He continues as agent of this property down to the time of this application, the only income he receives being the amount which he is paid for caring for it. That the respondent well knew that the property was not worth $225,000, well knew that his bond was absolutely valueless at the time, is apparent; and that it was also a part of the scheme to transfer the Wooster street property to Flora Sawyer, who was the real owner of the property then, is the only inference that can be drawn from the proceeding. She was about to become the owner of the Amsterdam avenue property, if she was not at the time of the execution of the bond its real owner. To secure the release from this lien, the scheme of giving this bond was devised, and this appellant and another were presented as the sureties to secure such release. He justified as the owner of a piece of property, for which, when it was conveyed to him, he had paid nothing, but had given a mortgage for the whole consideration, and which, about a month after he justified, he transferred to the same person whose property he had assisted in relieving from the lien of this mechanic's lien, without receiving any consideration, thus putting it out of his power to respond in any way to a demand for the amount that should be due under this lien. Flora Sawyer is and was his employer. Her property is subject to a lien, which is discharged upon the acceptance of this undertaking. She becomes, within a short time after the execution of the undertaking, the owner of the property that then stood in the name of the respondent, and which he, placing upon it an excessive value, had induced the court to accept as security for the payment of the lien, so as to procure its discharge; the result being that Flora Sawyer gets both pieces of property discharged from the lien held by the petitioner the only security for the payment of the lien being this undertaking, which is shown to be absolutely worthless, and which is made worthless by the transfer by the respondent of the property to Flora Sawyer. The condition of the other surety is also instructive. His justification is not annexed to the papers, but he dies soon after executing the undertaking, insolvent, with a judgment against him which is a secured claim upon all his property, and which is largely in excess of all the property he has. It is perfectly apparent that by this undertaking the court was imposed upon, that it was a scheme devised to relieve Flora Sawyer from the payment of the lien, and that the sureties upon the undertaking were entirely irresponsible, and joined in the attempt to deceive the court for the purpose of enabling Flora Sawyer to escape the payment of the lien, thereby defrauding the petitioner. It is time that parties who engage in such an attempt as this, to deceive the court, and induce it to adopt a course which results in defrauding one that the court is bound to protect, should be summarily dealt with, and taught that, if such a scheme is successful, it involves consequences much more serious than the payment of the amount of which a party is defrauded. We think the facts here show a clear attempt, unfortunately successful, to defraud this petitioner by means of judicial proceedings induced by this undertaking, the allowance of which was procured

by testimony which was false, and known to be false when given, and with the intention to proceed to convey the property, the ownership of which had justified the court in allowing the undertaking, to the person to be benefited by the release. That this respondent believed, or could have believed, that this property was worth any substantial sum over and above the mortgage then upon it, is absurd. He had taken a conveyance of the property without paying anything for it, except the giving back of a mortgage which was a lien upon it for the amount which he agreed to pay for it. He had proceeded to erect a building upon the property, to obtain the money to pay for which he had mortgaged the property in addition to the amount that was due upon the mortgage given as a consideration for its conveyance to him; and he does not pretend that one dollar of his money had been paid by him in the erection of this building. It is perfectly apparent that he at that time had no interest in the property which would secure the payment of this lien; and his subsequent conveyance of it, within a month, to the person for whose benefit he gave the undertaking, but who herself did not become liable upon the undertaking, without any consideration, is of itself evidence of the design of the respondent in executing the undertaking.

The claim of the respondent that this court has no power to punish a person guilty of a contempt, under the circumstances, because the proceeding was in the superior court, and that the court has since been abolished, is without merit. By section 5 of article 6 of the constitution, the superior court of the city of New York was abolished. By that section it was provided that all actions and proceedings then pending in such court should be transferred to the supreme court for hearing and determination, and the jurisdiction then exercised by the several courts abolished should be vested in the supreme court. At the time of the adoption of this constitution, and at the time of the abolition of the superior court, the superior court had jurisdiction in this proceeding to punish this respondent for contempt; and that jurisdiction, by virtue of the provision of the constitution cited, became vested in the supreme court.

The respondent also claims that there is some limitation to the time within which this proceeding could be commenced, which prevents from now punishing him for his contempt. We know of no provision limiting the power of the supreme court to punish for contempt, because of a lapse of time since the commission of the contempt. The fact that two years have expired, so that now this respondent is not liable to a criminal prosecution, has no relation to the power of the court to punish for a contempt; and, although it may be that this respondent cannot be punished criminally, we think he can be punished under the provisions of the Code, and that it was the duty of the court below to have granted the application. It is clear that this was a misconduct, by which a right of a party to a special proceeding pending in the superior court was defeated, by the respondent's offering himself as a fictitious surety, thus bringing the case clearly within subdivision 2 of section 14 of the Code, that such misconduct did actually deceive and prejudice the rights and remedies of the petitioner, and that, under section 2281 of the

Code, it was the duty of the court to punish the respondent by imposing upon him a fine or imprisonment. By section 2285 it is provided that, where an actual loss or injury has been produced to a party to an action or special proceeding by reason of the misconduct proved against the offender, a fine sufficient to indemnify the aggrieved party must be imposed upon the offender. The amount sufficient to indemnify the petitioner in this case would be the amount due upon the mechanic's lien, with the costs of this proceeding.

The order appealed from is therefore reversed, the motion granted, and the respondent adjudged guilty of contempt, and fined the amount remaining due upon the mechanic's lien, with the costs of this proceeding in the court below and in this court; and in default of payment the respondent should be committed to the county jail until such fine is paid. All concur.