## DOLLARD v. KORONSKY et al.

### Appeal of BLOCH.

(Supreme Court, Appellate Term. March 21, 1910.)

1. CONTEMPT (§ 17*)—CIVIL CONTEMPT—LIABILITY.

A surety on a court undertaking, conditioned on the payment of a judgment if the same is not set aside in proceedings therefor, does not create a lien on his property, and when, pending the proceedings, he disposes of all his property, with intent to make his obligation nugatory, he is not guilty of contempt of court for unlawfully interfering with the proceedings in violation of Judiciary Law (Consol. Laws, c. 30) § 753, subd. 4.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 17.*]

2. CONTEMPT (§ 16*)—CIVIL CONTEMPT—LIABILITY.

The act does not constitute contempt within Judiciary Law (Consol. Laws, c. 30) § 753, subd. 2, making a contempt to put in fictitious bail or fictitious security.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 45–47; Dec. Dig. § 16.*]

3. CONTEMPT (§ 4*)—CIVIL CONTEMPT—ELEMENTS.

Judiciary Law (Consol. Laws, c. 30) § 753, authorizing the court to punish for contempt a misconduct by which a right or remedy of a party to a pending action may be impaired in specified cases and in any other case where a proceeding to punish for a contempt has been usually practiced to enforce a civil remedy of a party to an action to protect the right of a party, limits the power to punish for civil contempt, and, when the principles of the common law governing contempts are violated, the act may be treated as a civil contempt, if it impairs the right of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

party in an action; but, where the case is not within the principles on which the common-law adjudications rest, it is not contempt within the statute.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 4; Dec. Dig. § 4.*]

4. CONTEMPT (§ 5*)—CIVIL CONTEMPTS—ELEMENTS.

Judiciary Law (Consol. Laws, c. 30) § 753, defining "civil contempts," punishable by fine and imprisonment, must be strictly construed.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 5.*]

5. STATUTES (§ 194*)—CONSTRUCTION—MEANING OF GENERAL WORDS.

Where general words follow particular words in a statute, the former must be construed as applicable to the things or persons particularly mentioned.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig. § 194.*]

6. CONTEMPT (§ 16*)—CIVIL CONTEMPT—ACTS CONSTITUTING.

A surety who justifies falsely, or who gives a fictitious undertaking, is guilty of contempt, and comes within Judiciary Law (Consol. Laws, c. 30) § 753, subd. 2, making a party putting in fictitious bail guilty of a contempt; but the statute cannot be extended by implication by making the surety punishable as for contempt in favor of him whose property is improperly taken by virtue of the fictitious undertaking.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 16.*]

7. CONTEMPT (§ 20*)—VIOLATION OF ORDER OF COURT.

One who, with knowledge that the court has decided to restrain certain acts, commits the prohibited acts before the order of the court is formally made or served, is guilty of contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–60; Dec. Dig. § 20.*]

Bijur, J., dissenting.

Appeal from City Court of New York, Special Term.

Action by Albert H. Dollard against Benjamin Koronsky and another, doing business under the firm name of B. Koronsky & Son. From an order of the City Court of the City of New York (64 Misc. Rep. 611, 118 N. Y. Supp. 922) adjudging Max E. Bloch guilty of contempt of court, he appeals. Reversed.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

David H. Solotaroff (Louis Marshall, of counsel), for appellant. Allen & Sabine (Yorke Allen, of counsel), for respondent.

SEABURY, J. This is an appeal by a surety upon an undertaking, from an order adjudging him in contempt of court and fining him $2,-120, and sentencing him to 60 days' imprisonment and committing him to prison until the fine is paid.

In the action of Dollard v. Koronsky judgment by default was entered against the defendant. The defendant then moved for an order staying proceedings by the plaintiff under said judgment pending the determination of a motion to vacate the judgment on the ground that the defendant was not served with process. The court granted the motion for a stay upon condition that the defendant should fur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nish an undertaking with sureties for the payment of the judgment in case it should survive the motion to vacate, together with the expenses of a reference. The undertaking was given, and the appellant was one of the sureties. The sureties having qualified, the sheriff released the levy which he had made under an execution issued upon the judgment recovered by the plaintiff.

The referee, to whom the motion was referred to take proof as to whether the defendant was served with process, reported adversely to the defendant. The court then denied the motion to set aside the judgment, and execution issued thereon was returned unsatisfied. One of the sureties upon the undertaking having died, and his estate being insolvent, the plaintiff sued the appellant upon the undertaking and recovered judgment, execution upon which was returned unsatisfied. In the examination of the appellant in proceedings supplementary to execution, the appellant admitted that at the time he qualified as surety he was worth $3,800, and that since that time he had earned $900, and that he had subsequently disposed of all this property. The court below has found that the appellant disposed of his property fraudulently and for the purpose of rendering it impossible for him to meet his obligations as surety.

Assuming the finding of the court below as to the facts to be correct, the question is presented whether the act of the appellant in disposing of his property with the fraudulent intent of making it impossible for him to pay the amount due on his undertaking constitutes a contempt of court.

The only statutory authority which it is claimed exists for the adjudication made by the court is to be found in subdivisions 4 and 8 of section 753 of the judiciary law (Consol. Laws, c. 30). This section, with the subdivisions referred to, is as follows:

"A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded or prejudiced, in either of the following cases: * * *

"(4) A person, for assuming to be an attorney or counselor, or other officer of the court, and acting as such without authority; for rescuing any property or person in the custody of an officer, by virtue of a mandate of the court; for unlawfully detaining, or fraudulently and wilfully preventing, or disabling from attending or testifying, a witness, or a party to the action or special proceeding, while going to, remaining at, or returning from, the sitting where it is noticed for trial or hearing; and for any other unlawful interference with the proceedings therein. * * *

"(8) In any other case, where an attachment or any other proceeding to punish for a contempt, has been usually adopted and practiced in a court of record, to enforce a civil remedy of a party to an action or special proceeding in that court, or to protect the right of a party."

The respondent relies chiefly upon subdivision 8 of this section to justify the action taken, rather than upon the words "unlawful interference with the proceedings," which are contained in subdivision 4 of that section, and which he claims are "not really important" because included in subdivision 8. Indeed, it is difficult to understand how it could be claimed that the appellant "unlawfully interfered with the proceedings." He gave a good undertaking, and his subsequent dis-

position of his property affected his solvency; but it did not constitute an interference with any legal proceeding. Nor can the claim be sustained that the act of the appellant constituted a "contempt" within the meaning of subdivision 2 of section 753 of the judiciary law. The learned counsel for the appellant recognizes the futility of such a claim and in his able brief declares, "We ask no aid of subdivision 2." It is therefore conceded by the respondent that, if there is any authority for making the order appealed from, it must be derived from subdivision 8 of section 753 of the judiciary law.

The lucid opinion of Judge Finch in People ex rel. Munsell v. Court of Oyer and Terminer, 101 N. Y. 245, 4 N. E. 259, 54 Am. Rep. 691, has done much to clarify the whole law governing contempts. In that opinion it is pointed out that criminal or public contempts and civil or private contempts were recognized by the common law. The "common-law power was very broad and vested large discretion in the courts." The Revised Statutes were "an evident effort" to "codify the law of contempt and bring it within definite and fixed rules," and the court pointed out that this codification "plainly recognized the difference between the two classes." The statute defining "criminal contempts" specifically enumerates the cases in which a court may punish for contempt, and that power can be exercised in no case not specifically enumerated in the statute. In cases of civil contempts "after a very careful and specific enumeration, it was still recognized that in the multitude of private rights other and unnamed cases might occur, and to meet that emergency subdivision 8 was added. * * * By this clause the common-law right as to private contempts was preserved outside of and beyond the statute enumeration, and this was deemed safe and prudent because in cases affecting only private rights and wrongs done merely to the suitor the courts would be under little or no temptation to unduly strain or exercise their power." Thus it is clear that "the private or civil contempt might go beyond the statutory enumeration and include also what was usual or permissible at common law."

In commenting upon subdivision 8, the court, in People ex rel. Platt v. Rice, 144 N. Y. 249, 263, 39 N. E. 88, 92, said:

"This provision preserved to courts of record the power they had previously possessed to punish, in the interest of a party to the action, as a contempt, an evasion, or a violation, of duty, or misconduct, which resulted in defeating or prejudicing the complainant's rights. It was a power formerly exercised by the English Courts of Chancery and which was continued by the Revised Statutes of this state. 2 Rev. St. pp. 534, 535."

Neither the diligence of counsel nor the efforts of the court have discovered any case where a surety has been adjudged in contempt for having disposed of his property with fraudulent intent.

It is difficult, if not impossible, to find a satisfactory definition of what constitutes a contempt of court at common law. In Oswald on Contempt of Court it is said:

"Contempt of court (which has been irreverently termed 'a legal thumbscrew') is so manifold in its aspects that it is difficult to lay down any exact definition of the offense." Page 4.

Another writer in lieu of a definition says:

"The mysterious and indefinable offense known as 'contempt of court' would seem to be as easy to commit as it is liable to prompt and condign punishment."

Hawkins, in his Pleas of the Crown, after considering the cases in which attorneys, officers of the court, and peers may be liable for contempt, says:

"However, it is certain that all other persons are liable to an attachment for contempt, all the particular instances whereof it would be endless to enumerate." Volume 2 (Curwood's Ed.) p. 220.

When we turn from the text-writers to the early reports, we find them burdened with many curious adjudications in reference to contempt. 2 Cooley's Bl. Comm. (4th Ed.) p. 1300 et seq. Upon examination it is found that in many of these cases it is impossible to distinguish whether the court treated the case as a criminal or civil contempt.

In preserving the common-law theory of contempts in civil cases as subdivision 8 of section 753 of the judiciary law does, we do not understand that the Legislature has adopted all the enumerable instances of contempt which the courts in England formerly recognized. While the common-law power to punish for contempt in civil cases exists both in England and in this state, yet we think that in both jurisdictions it exists to a more limited extent than formerly. While the cases in which the power may be invoked are not defined with precision, yet the power is no longer purely arbitrary and indefinite. From the very nature of the case, the instances in which the power may be exerted cannot be determined in advance, yet the principle which must be involved to induce the courts to act is clear. To justify the court in imposing punishment for contempt of court in any given case, it must be clear that the case is within the principle upon which the courts have from time immemorial acted.

The case of Miller v. Knox, 4 Bingham's N. C. 865, 873, is instructive upon this very question. In that case Mr. Justice Williams, after quoting Hawkins to the effect that in cases of contempt the courts might proceed "in a summary manner according to their discretion," says:

"Now, I would by no means intimate an opinion that the learned writer, by the latter general expression, meant to assert that the power of the courts is perfectly arbitrary and indefinite; but I do think he must be understood as describing their power not to be precisely limited or fixed, but that it may be extended to new cases as they arise, provided they be within the principle of those in which the power has been decided to exist."

The limitation here suggested is most important. Not every act which judicial caprice may conceive to be a contempt is any longer to be treated as such. To justify its punishment as a contempt, it must come fairly within the principle upon which the common law proceeded in vesting this power in the courts. We think that subdivision 8 of section 753 of the judiciary law is to be interpreted in the same spirit. It does not mean that our courts can punish for contempt in every instance where the power was formerly exercised by the English courts

at common law. It does, however, preserve to the courts the right to punish as a civil contempt in any case which comes fairly within the principle upon which the former adjudications rest If subdivision 8 was intended not only to preserve the principles of the common-law adjudications, but to cover every case where punishment for contempt might be imposed at common law, what was the necessity for carefully specifying seven distinct classes of contempt in the same section? All the cases, specified in the first seven subdivisions of section 753 of the judiciary law, could, we think, have been dealt with as contempts at common law under the sweeping powers which in earlier times the courts exercised upon this subject. Section 753 of the judiciary law is a re-enactment of section 14 of the Code of Civil Procedure, which was substantially the same as part 3, c. 8, tit. 13, § 1, Rev. St. ([1st Ed.] vol. 2, pp. 534, 535), and was, we think, intended to limit and define a power which experience had shown was liable to abuse. That that section was intended as a limitation upon the power of the court appears from the language of the section itself, which applies only to acts "by which a right or remedy of a party to a civil action or special proceeding pending in the court may be defeated, impaired, impeded, or prejudiced." Schreiber v. Raymond & Campbell Mfg. Co., 18 App. Div. 158, 45 N. Y. Supp. 442. That such was the purpose of the statute also appears from the notes of the revisers of the statutes where they say that they have pointed out the distinction between contempts "which are really such and those acts which have been treated as contempts for the mere purpose of enforcing some civil remedy." 3 Rev. St. (2d Ed.) p. 772.

In commenting upon the section which in substantially the same form is included in section 753 of the judiciary law, the revisers say:

"In this section, an enumeration of the general cases has been made, as well to define as to limit a power, which, while it is absolutely necessary in many cases, is yet, perhaps, more liable to abuse, and in England has been abused more than any other possessed by the courts. The preceding section includes all cases which a diligent examination of all the writers on the subject has discovered, and which, it is supposed, ought to be included." 3 Rev. St. (2d Ed.) p. 773.

Bearing in mind the purpose of the Legislature in enacting this section, which is so clearly revealed in the comment of the revisers quoted above, and that the exercise of the power may result in imprisonment without trial by jury, it is evident that the statute should be strictly construed. Fromme v. Gray, 14 Misc. Rep. 592, 595, 36 N. Y. Supp. 1107, affirmed and opinion approved, 148 N. Y. 695, 698, 43 N. E. 215; Schreiber v. Raymond & Campbell Mfg. Co., supra. The words "neglect or violation of duty or other misconduct," which are used in the statute, are so general and indefinite as to fail to define the acts for which one may be punishable as for a contempt of court. The neglect, violation of duty, or misconduct must be such as defeats, impairs, impedes, or prejudices the right or remedy of a party to a civil action or special proceeding, in either of the cases specified in the first seven subdivisions of section 753 of the judiciary law, or the act must be within the principle upon which the common-law adjudications in cases of civil contempt rest. The principle upon which the common-law

adjudications in cases of civil contempt rest are specified in the first seven subdivisions of section 753 of the judiciary law. Manifestly the principle does not include every neglect, violation of duty, or misconduct which impairs or prejudices the right or remedy of a party to a pending action. The exercise of such latitudinary power by the courts is inconsistent with the purpose of the Legislature which is disclosed in the comment of the revisers.

The principles underlying the common-law cases which can be distinguished as cases of civil contempt are included in the first seven subdivisions of section 753 of the judiciary law. Whenever these principles are violated, regardless of the particular form which the act may take, it may be treated as a civil contempt if it defeats, impairs, impedes, or prejudices the rights of a party in a civil action or special proceeding. If a case arises which is within these principles, it matters not that the case is novel or unusual. If it is within the principle, it is immaterial that no precedent can be cited for it. If, however, the case is not only without precedent, but not within the principle upon which the common-law adjudications rest, it cannot be said to be subject to that summary power by which courts vindicate their own authority. This interpretation of section 753 of the judiciary law is in accord with the well-settled rule of statutory construction governing such a statute. The first seven subdivisions of section 753 of the judiciary law specify the particular classes of cases in which punishment for a civil contempt may be imposed. Subdivision 8 of that section contains a general clause and refers to "any other case" which has been punishable as a civil contempt at common law. This general clause applies only to matters ejusdem generis, and is not a grant of plenary power. Sedgwick, in his work on the Construction of Statutory and Constitutional Law (p. 361), says:

"Where general words follow particular words, the rule is to construe the former as applicable to the things or persons particularly mentioned."

A review of the authorities upon which the learned court below in its opinion, and the respondent in his brief, rely to sustain the order which has been made, shows all are explainable upon the principle stated above. The only cases cited by the learned court below are cases of false justification of a surety, or where fictitious undertakings were given, except the cases of People v. Kearney, 21 How. Prac. 74, and Greite v. Henricks, 71 Hun, 11, 24 N. Y. Supp. 545, and Dollard v. Koronsky, 61 Misc. Rep. 392, 113 N. Y. Supp. 793, affirmed 133 App. Div. 896, 118 N. Y. Supp. 1103. The first two of these cases are not analogous to the case at bar, and are within the principle of the cases which hold that one who violates the mandate of the court is punishable as for a contempt, although the order of the court has not been formally entered and served. These cases are within the principle enunciated by Lord Eldon in Hearn v. Tenant, 14 Ves. 136, which will be referred to below. The case of Dollard v. Koronsky, supra, is entirely different from the present case. There a party to a pending action was adjudged in contempt for deceit and the abuse of a mandate or proceeding of the court, by virtue of the statutory authority conferred by subdivision 2 of section 753 of the judiciary law.

The present case should not be confused with cases where fictitious bail or security is given pursuant to the mandates of the court. It is well settled that a surety who justifies falsely, or one who gives a fictitious undertaking, is guilty of contempt. Matter of Sheppard, 33 Misc. Rep. 724, 68 N. Y. Supp. 974; Matter of Goslin, 95 App. Div. 407, 88 N. Y. Supp. 670; Buffalo L. T. & S. D. Co. v. Medina G. & E. L. Co., 68 App. Div. 414, 74 N. Y. Supp. 486; Hall v. Lanza, 97 App. Div. 490, 89 N. Y. Supp. 980; Nuccio v. Porto, 72 App. Div. 88, 76 N. Y. Supp. 96; Matter of Hay Foundry & Iron Works, 22 App. Div. 87, 47 N. Y. Supp. 802; People ex rel. Wise v. Tamsen, 17 Misc. Rep. 212, 40 N. Y. Supp. 1047; McAveney v. Brush, 1 App. Div. 97, 34 N. Y. Supp. 101, 37 N. Y. Supp. 105. These cases rest upon an entirely different basis from the case now before us and are within subdivision 2 of section 753 of the judiciary law.

The statutory provisions are not to be extended by implication. Thus a surety who makes a false justification is not punishable as for a contempt in favor of him whose property is improperly taken under an attachment (Schreiber v. Raymond & Campbell Mfg. Co., supra), and in Nuccio v. Porto, supra, Mr. Justice Laughlin points out that:

"The statutory authority, however, to punish a surety who is not a party to the action, is not very extensive."

There is a class of cases, referred to above, which are clearly within the principle asserted, and which are plainly distinguishable from the case at bar. These are cases where one, knowing that the court has decided to restrain certain acts, commits the prohibited acts before the order of the court is formally made or served. Such acts are, of course, punishable as contempts because the mandate of the court is disobeyed, even though the usual formalities had not yet been complied with. These cases are governed by the rule stated by Lord Eldon in Hearn v. Tenant, supra, where he said:

"If these parties by their attendance in court were apprised that there was an order, that is sufficient, and I cannot attend to a distinction so thin, as that persons standing here until the moment the Lord Chancellor is about to pronounce the order, which from all that passed they must know will be pronounced, can by getting out of the Hall at this instant avoid all the consequences."

In People v. Sturtevant, 9 N. Y. 263, 278, 59 Am. Dec. 536, Judge Johnson said:

"In administering the law in respect to the violation of injunctions, the Court of Chancery never lost sight of the principle that it was the disobedience of the order of the court which constituted the contempt, and, therefore, although it required of the party availing himself of its order a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of its order to be wholly lost, when the party sought to be bound by the order had obtained knowledge or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him."

The act of the appellant in disposing of his property after he had given a good undertaking was not such neglect, violation of duty, or misconduct as involved either directly or indirectly a disobedience to

or neglect of any lawful mandate or order of the court. Nor was it such an act as can be held to be within the principle of any of the cases specified in the first seven subdivisions of section 753 of the judiciary law. It was not therefore such an act as rendered the appellant punishable as for a civil contempt.

The giving of the undertaking did not impress a lien upon the appellant's property. It was purely a contract obligation. That a surety should dispose of his property for the purpose of rendering the obligation of the undertaking uncollectible was doubtless reprehensible and a fraud upon his creditor. None of these considerations, however, establish that the act of the appellant constituted a contempt of court. There are many acts which are reprehensible as constituting a fraud; but they are not, on this account, to be dealt with in the summary fashion authorized in cases of contempt. It has been well said, in reference to contempt that:

"As a wrong purely moral, or affecting an object not possessing a legal status, it has in the eye of the law no existence." Oswald on Contempt, p. 1.

Thus, knowingly interposing a false answer is not a contempt of court. Fromme v. Gray, supra. False swearing by a judgment debtor in supplementary proceedings is not a contempt. Bernheimer v. Kelleher, 31 Misc. Rep. 464, 64 N. Y. Supp. 409. Perjury committed upon a trial is not a contempt of court, nor is the fact that a defendant being sued, and, knowing that he is without a defense to the action, disposes of his property in fraud of his creditors and for the purpose of rendering the judgment which he knows will be entered against him, inefficient.

To sustain this order would, we think, require a radical departure from established precedents, and would result in extending the power to punish for contempt of court beyond the limitations which have been placed upon it by legislative enactments and judicial decisions.

In our judgment the act of which the court below has found the appellant guilty does not constitute a contempt of court, and the court was without power to punish it as such.

Order reversed, with $10 costs and disbursements, and appellant discharged.

LEHMAN, J., concurs.

BIJUR, J. (dissenting). It does not seem to be open to doubt that appellant deliberately disabled himself to meet the obligation of his undertaking. The only question is whether this conduct, initiated six months after the giving of the undertaking, constituted a civil contempt of court.

It was not a "disobedience to a lawful mandate of the court" by "a party to the action or other person," in the language of subdivision 3, § 753, of the judiciary law; but, under the decisions, I think that it was "an unlawful interference with the proceedings" in an action, for which, under subdivision 4, any person may be held as for a contempt, and was also an "abuse of a proceeding of the court," for which, under subdivision 2, a party to the action may be so held; this subdivi-

sion having frequently been interpreted to apply as well to sureties on an undertaking.

In Nuccio v. Porto, 72 App. Div. 88, 90, 76 N. Y. Supp. 96, 97, the Appellate Division, First Department, said, per Laughlin, J.:

"The undertaking was executed, furnished, and accepted as a 'proceeding of the court,' for upon it the court acted in granting the order of arrest, and the false justification of the surety in an undertaking which was to be the basis of an order of arrest constituted an unlawful interference with the progress of the action. Code Civ. Proc. § 14, subds. 2, 4; Matter of Hay Foundry & Iron Works, 22 App. Div. 87 [47 N. Y. Supp. 802]; Lawrence v. Harrington, 63 Hun, 195 [17 N. Y. Supp. 649]; Id., 133 N. Y. 690 [31 N. E. 627]. This authorized and fully justified punishing him for contempt."

The learned Appellate Division thus expressly holds, at the outset, that the "undertaking" was a "proceeding of the court." See, also, Wilson v. Allen, 3 How. Prac. 369, 371. It bases its decision that the act of appellant was a contempt on two distinct considerations: First, that the false justification of a surety on an undertaking was a contempt under subdivision 2 of section 14 of the Code (now 753 of the judiciary law); and, second, that such justification constituted an unlawful interference with the progress of the action, namely, the proceedings therein, under subdivision 4.

To the same effect, in Lawrence v. Harrington, 63 Hun, 196, 17 N. Y. Supp. 649, the General Term of the Second Department, per Pratt, J., spoke of a false justification of sureties as follows:

"It was an interference with the due and orderly progress of the action to its ultimate close."

By parity of reasoning, if false justification by a surety is unlawful interference with the proceedings in an action, the deliberate and fraudulent dispersal by a surety of the property which formed the basis of his qualification seems to me to be an equivalent interference with such proceedings. The party for whose protection the court has directed that the undertaking be given is compelled to accept the risk that the surety may in the ordinary course of his affairs become insolvent and impoverished to an extent to disable him to respond adequately in the event of his ultimate liability; but he does not assume the risk that such surety will deliberately and intentionally disable himself from responding to that liability which was palpably contemplated when the undertaking was given. Such conduct on the part of the surety is not alone a fraud upon the party for whose benefit the undertaking was given, but is, in the language of the cases above cited, an unlawful interference with the proceedings in the action and with the due and orderly progress of the action to its ultimate close. It is, therefore, punishable as a civil contempt, under subdivision 4. It appears to me to be also an "abuse of a proceeding of the court," under subdivision 2.

The fact that plaintiff waived justification does not affect the issue. As was said in Matter of Hopper, 9 Misc. Rep. 171, 29 N. Y. Supp. 715, plaintiff was fully warranted in relying upon the surety's oath as to his qualification.

The order appealed from should be affirmed, with costs and disbursements.