# SUPREME COURT.

THE PEOPLE *ex rel.* THE BROOKLYN INDUSTRIAL SCHOOL ASSO-
CIATION, &c., respondents agt. THOS. KEARNEY, appellant.

Where the judgment of this court, at general term, upon proceedings on *certiorari,*
amongst other things, ordered that the defendant, Thomas Kearney, deliver to
the *relators* the infant children, Catharine Laffin and Mary Ann Laffin, who were
adjudged to be entitled to their custody and care *(see 19 How. Pr. R.,* 493,)
and upon demand by the *relators* of the defendant for the delivery up of such
children in pursuance of such judgment, and a refusal by the defendant to com-
ply with such demand,
*Held,* on proceedings upon *attachment* against the defendant, by which it appeared
that the defendant had removed the children to a foreign country pending the
*certiorari,* that the defendant was in *contempt,* and must suffer the consequences.

*Poughkeepsie General Term, February,* 1861.
EMOTT, BROWN and SCRUGHAM, *Justices.*
APPEAL on proceedings upon attachment for contempt.

JOHN WINSLOW, *for appellant.*
JESSE C. SMITH, *for respondents.*

By the court, BROWN, Justice. The attachment in this·
proceeding was issued against Thomas Kearney on the 5th
and returnable on the 8th September, 1860. He appeared
on the return day, when the respondents filed their inter-
rogatories, and an adjournment was granted until the first
Monday of October to afford the appellant time to file and
serve his answers thereto within ten days. On the 17th
September, 1860, he made, filed and served his answers
under oath. At the October special term the relators ap-
plied on due notice for leave to file and serve further inter-
rogatories, and that the defendant answer the same, which,
after hearing counsel, was granted on the 12th of that
month. These further interrogatories were filed and served,
and the defendant answered the same in the usual manner.
The order of the 12th October has not been appealed from.

During these proceedings no objection was made by the defendant that he had not been served with a copy of the judgment of this court, and ordering restitution of the infant children, which was the subject of the proceeding. Had he interposed the objection, proof of the service would doubtless have been supplied, or the respondents might have discontinued their proceedings upon the attachment until the service could have been made, and then commenced *de novo.* The defendant saw fit to acquiesce in the regularity of the issuing of the attachment, to submit to answer the relator's interrogatories, and their further interrogatories filed under the order of the 12th October, 1860. He first took this objection to the relator's proceedings, that the attachment was improvidently granted, on the 22d December, 1860, when the matter was brought to a hearing on the interrogatories and answers; I think he was then too late. Whatever force there might have been in this objection, if raised, and urged in due season, on the return day of the attachment, or by a motion to set it aside, it would be manifestly unjust to the relators to entertain it now. Besides it will appear presently that the defendant had put it out of his power to comply with the terms of the judgment, for he had removed the infants beyond the jurisdiction of the court, in anticipation of an order or judgment for their restoration to the respondents. He had also absented himself from his usual place of residence, and could not be found until the 27th August, 1860, when the infants were demanded of him.

The observations of Judge Johnson in the case of the *People* agt. *Sturtevant*, (5 *Seld.*, 278,) upon the law of contempts, may well apply to the present case. He says: " In administering the law in respect to the violation of injunctions the court of chancery never lost sight of the principle; that it was the disobedience to the order of the court which constituted the contempt; and therefore, although it required of the party availing himself of its order a substantial com-

pliance with the rules of practice upon the subject, it would not usually allow the effect of its order to be wholly lost where the party sought to be bound by the order had actual knowledge or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him." (*Vide the cases to which he refers: Hull agt. Thomas,* 3 *Edw. Ch. R.,* 236; *People* agt. *Brower,* 4 *Paige,* 405.)

The relator is a charitable institution, incorporated by the act of the 15th of April, 1857, and is intended to provide guardianship and protection for poor and destitute children. In March, 1859, it had the custody and charge of Catharine Laffin and Mary Ann Laffin, infant children of the ages of five and three years, confided to its care by their father, their only surviving parent, in his last illness, by virtue of an instrument in writing made and executed in conformity with the act of incorporation. The children were without the means of subsistence, and had no property in possession or expectation. Thomas Kearney, the defendant, caused himself to be appointed the guardian by the surrogate, and thereupon sued out a writ of *habeas corpus* before the county judge of Kings county, directed to the respondents, and claiming the custody of the two infants, and that they might be awarded to him. Such proceedings were had upon the return of the writ; that afterwards, on the 16th day of May, 1859, the county judge made an order that the defendant was entitled to the custody of the children, and that they be discharged from the custody of the respondents, who were to deliver them over to him. On the next day, the 17th, the relators sued out and served a writ of *certiorari,* directed to the county judge, and removed the proceedings into this court. In the short interval of time which elapsed between the decision of the county judge and the suing out and service of the writ of *certiorari,* the defendant had obtained the possession and control of the infants. The county judge made his return of all

the proceedings before him, and the questions arising thereon were brought to a hearing and argued by both sides at the general term held at Brooklyn in February, 1860. At the May term following the decision was rendered, reversing the order of the county judge, and awarding restitution of the infant children to the relators. ( *Vide Howard's Pr. R., vol.* 19, *p.* 493.) An order to this effect was entered, and the judgment perfected on the 19th June, 1860. A demand of the children was duly made on the 27th August of the defendant, who refused to deliver them up. Thereupon the relators obtained the attachment, which is the commencement of these proceedings.

The defendant, in his answers to the relators' interrogatories, admits that immediately after the children had been delivered to him under the order of the county judge, he was made aware that the proceedings had been removed into this court. He also admits that he was present in court at the general term at Brooklyn in February, 1860, and heard the questions brought up by the *certiorari* argued by counsel; and that after that, in the same month of February, he removed the children himself out of the state of New York, and beyond the jurisdiction of its courts, and left them with a sister of his wife in the township of Treag, county of Kerry, in Ireland, where they remained when he last heard from them.

It is to be remembered that such power as the defendant claims to exercise over these infant children, he claims as incidental to his office—as their general guardian—a trust which he derives from the laws and judicial tribunals of this state, and from no other source. He is responsible to them for the manner of its exercise. I do not doubt— no one who reads these proceedings and his answers can have any doubt—that he removed the children to a distant country, where the laws of this state and the process of its courts are without power and authority, so that in the event of a restitution being awarded to the relators he

might disregard and disobey with impunity both the law and the process of the courts. He could have had no other motive. No sufficient reason is assigned for their removal just at that particular time. He does not show that he has provided, or that he has the ability to provide any means for their support. Nor does he show, or pretend to show, that the person with whom he left them, is under the least obligation to furnish them the means of existence, or to afford them protection for a single day. He well knew at the time he took them away that they were claimed by the relators as well as by himself; that the rights of both were being considered by this court; and he may have seen, when he heard the argument in February, that his title to hold them from the relators could not be maintained. To carry them out of the country under the circumstances, just at that time, without waiting for the judgment, was a gross breach of his duty, as their guardian, and a contempt of the power and authority of this court. The writ of *certiorari* stayed all the proceedings. (*Patchin* agt. *The Mayor of Brooklyn*, 13 *Wend.*, 664; *Conover* agt. *Devlin*, 24 *Barb. S. C. R.*, 636.) Its effect was to remove them from before the county judge into this "court, to be there examined and corrected." This is the language of the 71st section of the statute in regard to writs of *habeas corpus* and *certiorari*, when issued to inquire into the cause of detention. This court is to examine into the proceedings and correct any errors which may be found therein. This prerogative writ is designed to effect some useful and beneficial purpose. If the subordinate tribunal, or officer, who granted the writ of *habeas corpus*, has by his order awarded the custody of the subjects of the proceeding to the wrong person, it is the duty of this court, upon the *certiorari*, to reverse the order and award restitution to the person rightfully entitled to them. But if the subjects of the proceeding may be removed out of the country, and beyond the jurisdiction of the court, by one of the parties to it, within

the few hours which intervene between the making of the order of the officer or inferior tribunal, and the allowance of the writ of *certiorari*, then the latter proceeding becomes useless, and can. effect no beneficial purpose, and the power and authority of the court granting it becomes an object of contempt rather than that of deference and respect.

The judgment of this court, upon the proceedings on the writ of *certiorari*, is, amongst other things, that the defendant therein, Thomas Kearney, deliver to the relators the infant children, Catharine Laffin and Mary Ann Laffin, who are adjudged to be entitled to their custody and care. This judgment has not been appealed from, reversed or modified, but remains in full force and effect. The act concerning proceedings, as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions, (2 *R. S.*, 534) provides that " every court of record shall have power to punish, by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause, or matter depending in such court, may be defeated, impaired, impeded or prejudiced in the following cases." Enumerating in the 3d subdivision parties to suits, " attorneys, counsellors, solicitors, and all other persons, for the non-payment of any sum of money ordered by such court to be paid in cases where, by law, execution cannot be awarded for the collection of such sum, and for any other disobedience to any lawful order, decree or process of such court." The defendant cannot defeat, impair, impede, or prejudice the remedy of the relators in this proceeding by his own wrongful act. If he has, by the removal of the infant children, pending the litigation, to a foreign country, thus put it out of his power presently to comply with the order and judgment of the court, he must abide by the consequences, which the law provides shall ensue when its authority is contemned and disregarded.

The order of the special term of the 22d December, 1860, adjudging the defendant, Thomas Kearney, to be in contempt, should be affirmed, with costs.