In the Matter of the Application of the HAY FOUNDRY AND IRON WORKS, Appellant, to Punish WILLIAM J. PURDY, Respondent, as for a Contempt.

*A surety who, by false justification, secures the release of a mechanic's lien is guilty of a contempt of court — lapse of time is not a defense — power of the Supreme Court as successor of the Superior Court.*

A person who justifies as surety on a bond given in proceedings to secure the release of certain premises from a mechanic's lien by claiming that he is the owner of certain property, alleged by him to be worth $225,000, for which in fact he paid nothing, having given a mortgage for the whole consideration, and also for the cost of a building which he erected thereon, which property, within a month after the justification, he conveyed, without consideration, to the party upon whose property the mechanic's lien existed, who was his employer, and that he also owned a lot worth $3,000, subject to a mortgage for $1,000, which lot disappeared, no explanation being given of what had become of it, is guilty of misconduct within the meaning of subdivision 2 of section 14 and section 2281 of the Code of Civil Procedure, and may, at the instance of the lienor, be punished as for a contempt of court.

The fact that two years elapsed since the commission of the offense does not preclude his punishment for a contempt, although it bars criminal proceedings against him.

The fact that the proceeding to discharge the lien was taken in the Superior Court, since abolished, does not affect the right of the Supreme Court to hear the proceeding for the contempt, the Supreme Court having been constituted by section 5 of article 6 of the Constitution of 1894 the successor of the Superior Court.

APPEAL by the petitioner, the Hay Foundry and Iron Works, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of July, 1897, denying its motion to punish William J. Purdy for contempt of court.

*Nelson Zabriskie,* for the appellant.

*J. Baldwin Hands,* for the respondent.

INGRAHAM, J. :

The facts presented upon this application make it quite clear that the proceeding to procure the release of the property covered by the mechanic's lien upon Amsterdam avenue, and the giving of the bond to secure the release of such lien, was a scheme devised for

the purpose of transferring the lien from the property to two irresponsible sureties, thus relieving the real owner of the property from the burden of paying the lien, and to that scheme this respondent was a party.

The respondent justified as a surety by claiming to be the owner of certain premises in Wooster street, upon which a building was then in course of construction.  The justification was in September, 1894.  The witness swore that he had owned the property since the previous March, and that it was worth $225,000, but that there was a mortgage upon the property for $138,000, which, upon the completion of the building, was to be increased to $150,000.  The respondent also swore that he owned a lot on Eagle avenue, in the city of New York, worth $3,000, subject to a mortgage of $1,000. Before the judgment upon this bond was obtained against him, this lot had disappeared, and no explanation is given as to what had become of it.  Upon his examination in supplementary proceedings, he testified that he had purchased this real estate in Wooster street in the March previous to his executing the undertaking; that he had paid no money for it at the time, but had simply given a mortgage upon it for $95,000.  He further testified that, in October, 1894, the month after he signed this justification in which he swore that the property was finished and was worth $225,000, he conveyed the lot to one Flora Sawyer, without any consideration except that she agreed to assume the payment of the debts on the property.  Thus, about a month after he swore that the property in Wooster street was worth $225,000, he conveyed it without receiving any other consideration for it than the assumption of the mortgage or debts upon it, and conveyed it to the one who had acquired the title to the Amsterdam avenue property, upon which was the lien that was discharged by his giving the bond. His future relation to this Amsterdam avenue property is also quite instructive.  He continues as agent of this property down to the time of this application, the only income he receives being the amount which he is paid for caring for it.  That the respondent well knew that the property was not worth $225,000, well knew that his bond was absolutely valueless at the time, is apparent, and that it was also a part of the scheme to transfer the Wooster street property to Flora Sawyer, who was the real owner of the property

then, is the only inference that can be drawn from the proceeding. She was about to become the owner of the Amsterdam avenue property, if she was not, at the time of the execution of the bond, its real owner. To secure the release from this lien the scheme of giving this bond was devised, and this appellant and another were presented as the sureties to secure such release. He justified as the owner of a piece of property for which, when it was conveyed to him, he had paid nothing, but had given a mortgage for the whole consideration, and which, about a month after he justified, he transferred to the same person whose property he had assisted in relieving from the lien of this mechanic's lien without receiving any consideration, thus putting it out of his power to respond in any way to a demand for the amount that should be due under this lien. Flora Sawyer is, and was, his employer. Her property is subject to a lien, which is discharged upon the acceptance of this undertaking. She becomes within a short time after the execution of the undertaking the owner of the property which then stood in the name of the respondent, and which he, placing upon it an excessive value, had induced the court to accept as security for the payment of the lien so as to procure its discharge; the result being that Flora Sawyer gets both pieces of property discharged from the lien held by the petitioner, the only security for the payment of the lien being this undertaking, which is shown to be absolutely worthless, and which is made worthless by the transfer of the property by the respondent to Flora Sawyer.

The condition of the other surety is also instructive. His justification is not annexed to the papers, but he dies soon after executing the undertaking, insolvent, with a judgment against him which is a secured claim upon all his property, and which is largely in excess of all the property he has. It is perfectly apparent that, by this undertaking, the court was imposed upon; that it was a scheme devised to relieve Flora Sawyer from the payment of the lien, and that the sureties upon the undertaking were entirely irresponsible and joined in the attempt to deceive the court for the purpose of enabling Flora Sawyer to escape the payment of the lien, thereby defrauding the petitioner. It is time that parties who engage in such an attempt as this to deceive the court, and induce it to adopt a course which results in defrauding one whom the court is bound to

FIRST DEPARTMENT, NOVEMBER TERM, 1897.          [Vol. 22.

protect, should be summarily dealt with, and taught that, if such a scheme is successful, it involves consequences much more serious than the payment of the amount of which a party is defrauded. We think the facts here show a clear attempt, unfortunately success-ful, to defraud this petitioner by means of judicial proceedings induced by this undertaking, the allowance of which was procured by testimony which was false, and known to be false, when given, and with the intention to proceed to convey the property, the owner-ship of which had justified the court in allowing the undertaking, to the person to be benefited by the release.   That this respondent believed, or could have believed, that this property was worth any substantial sum over and above the mortgage then upon it is absurd. He had taken a conveyance of the property without paying any-thing for it, except the giving back of a mortgage which was a lien upon it for the amount which he agreed to pay for it.   He had proceeded to erect a building upon the property, to obtain the money to pay for which he had mortgaged the property in addition to the amount that was due upon the mortgage given as a consideration for its conveyance to him, and he does not pretend that one dollar of his money had been paid by him in the erection of this building. It is perfectly apparent that he at that time had no interest in the property which would secure the payment of this lien, and his sub-sequent conveyance of it within a month, without any consideration, to the person for whose benefit he gave the undertaking, but who, herself, did not become liable upon the undertaking, is of itself evi-dence of the design of the respondent in executing the undertaking.

The claim of the respondent that this court has no power to punish a person guilty of a contempt under the circumstances, because the proceeding was in the Superior Court, and that the court has since been abolished, is without merit.   By section 5 of article 6 of the Constitution of 1894 the Superior Court of the city of New York was abolished.   By that section it was provided that all actions and pro-ceedings then pending in such court should be transferred to the Supreme Court for hearing and determination, and the jurisdiction then exercised by the several courts abolished should be vested in the Supreme Court.   At the time of the adoption of this Constitu-tion, and at the time of the abolition of the Superior Court, the Superior Court had jurisdiction in this proceeding to punish this

respondent for contempt, and that jurisdiction, by virtue of the provision of the Constitution cited, became vested in the Supreme Court.

The respondent also claims that there is some limitation to the time within which this proceeding could be commenced which prevents the court from now punishing him for his contempt. We know of no provision limiting the power of the Supreme Court to punish for contempt because of a lapse of time since the commission of the contempt. The fact that two years have expired so that now this respondent is not liable to a criminal prosecution has no relation to the power of the court to punish for a contempt; and although it may be that this respondent cannot be punished criminally, we think that he can be punished under the provisions of the Code of Civil Procedure, and that it was the duty of the court below to have granted the application. It is clear that this was a misconduct by which a right of a party to a special proceeding pending in the Superior Court was defeated by the respondent's offering himself as a fictitious surety, thus bringing the case clearly within subdivision 2 of section 14 of the Code; that such misconduct did actually deceive and prejudice the rights and remedies of the petitioner, and that under section 2281 of the Code it was the duty of the court to punish the respondent by imposing upon him a fine or imprisonment. By section 2284 it is provided that where an actual loss or injury has been produced to a party to an action or special proceeding, by reason of the misconduct proved against the offender, a fine sufficient to indemnify the aggrieved party must be imposed upon the offender. The amount sufficient to indemnify the petitioner in this case would be the amount due upon the mechanic's lien, with the costs of this proceeding.

The order appealed from is, therefore, reversed, the motion granted, and the respondent adjudged guilty of contempt and fined the amount remaining due upon the mechanic's lien, with the costs of this proceeding in the court below and in this court, and in default of payment the respondent should be committed to the county jail until such fine is paid.

VAN BRUNT, P. J., RUMSEY and WILLIAMS, JJ., concurred.

Order reversed and motion granted, with costs of the proceeding in this court and in the court below.