(68 App. Div. 414.)

BUFFALO LOAN, TRUST & SAFE DEPOSIT CO. v. MEDINA GAS & ELECTRIC LIGHT CO. et al.

In re FITZGERALD.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. CONTEMPT—APPEAL BOND—FALSE AFFIDAVIT AS TO RESPONSIBILITY.

Code Civ. Proc. § 14, provides that a court of record may punish, by fine and imprisonment, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action may be defeated or prejudiced, in the following cases: (2) A party to an action for putting in fictitious bail or surety; (8) in any other case where a proceeding to punish for contempt has usually been adopted to enforce a civil remedy of a party to an action, or to protect the rights of a party. Held, that a surety on an appeal bond, who made a false affidavit as to

his responsibility in order to deceive the court,—there having been an adjudication that by such misconduct he had prejudiced the rights of a party,—was punishable for contempt.

**2. SAME—FINE—AMOUNT.**

Code Civ. Proc. § 2284, provides that where "actual injury has been produced to a party to an action" by the misconduct of a person adjudged to be in contempt, and an action for damages is not specially prescribed, a fine sufficient to indemnify the aggrieved party shall be imposed on the offender, and paid over to the aggrieved party. A surety on an appeal bond given in a foreclosure suit made a false affidavit as to his responsibility, in order to obtain a stay of proceedings, and thereby delayed the sale over 14 months. The undertaking was conditioned to pay costs and expenses, not exceeding $500, and also any deficiency resulting from the sale, not exceeding $5,000. A deficiency judgment was afterwards entered for $6,688, and judgment procured against the surety for $5,121. He was insolvent, and the bond worthless. *Held,* that the amount of the judgment procured against the surety determined the amount of the fine to be imposed on him,—that being the loss occasioned by his misconduct,—and that a fine of $6,000 was unauthorized.

**3. SAME—REDUCTION ON APPEAL.**

The court on appeal has the power, in an appropriate case, to make a reduction in the amount of a fine imposed on a person for contempt.

Williams, J., dissenting.

Appeal from special term, Orleans county.

Action by the Buffalo Loan, Trust & Safe Deposit Company against the Medina Gas & Electric Light Company and another, in which Cornelius Fitzgerald, assignee of an appeal bond executed pending the controversy, applied for an order adjudging John F. Moffett, surety on the bond, in contempt for having falsely represented his financial ability, and for other deceit. From an order adjudging Moffett to be in contempt, and imposing a fine of $6,000, Moffett appeals. Modified.

This action was brought by the plaintiff, as trustee, to foreclose a mortgage upon certain premises located in the village of Medina, Orleans county, which was given to secure the payment of 10 negotiable bonds of the Medina Gas & Electric Light Company, of which company the appellant was at one time a large stockholder, and subsequently the receiver. Issue was joined in the action, and, after the trial thereof, judgment of foreclosure and sale was rendered in favor of the plaintiff, as such trustee, in and by which judgment it was determined that the amount due upon such bonds was the sum of $16,532.88. An appeal was in due time taken to the appellate division, where the judgment appealed from was modified by deducting from the amount due the sum of $1,293.04, and as thus modified the judgment was in all things affirmed. 12 App. Div. 199, 42 N. Y. Supp. 781. From the latter judgment an appeal was subsequently taken to the court of appeals, and, in order to procure a stay of proceedings pending such appeal, an undertaking, in the usual form, was duly executed by the appellant, Moffett, and one Hodgkins, in and by which they jointly and severally undertook that the appellants would pay all costs and damages which might be awarded against them on such appeal, not exceeding $500, and also that in the event the judgment so appealed from should be affirmed, or the appeal dismissed, the appellants would "pay any deficiency which may occur on the sale in discharging the sum to pay which the sale is directed, with interest and costs and expenses chargeable against the proceeds of the sale, not exceeding the sum of five thousand dollars." Attached to this undertaking was an affidavit executed by Moffett on the 12th day of January, 1899, in and by which he swore that he was a freeholder of the county of Jefferson, in this state, and worth the sum of $10,000 over and above all debts and liabilities. A similar affidavit was likewise made by Henry C. Hodgkins,

the other surety to the undertaking. Thereafter the judgment so appealed from was affirmed by the court of appeals (162 N. Y. 67, 56 N. E. 505), and the judgment of that court was made the judgment of this court on the 14th day of March, 1900. Thereupon the premises covered by the mortgage in question were sold· at public auction, and upon the sale a deficiency of $6,688.95 arose, for which amount judgment was duly entered against the Medina Gas & Electric Light Company; and subsequently an action was brought upon the undertaking by one Cornelius Fitzgerald, to whom · the same had in the meantime been assigned, and this action resulted in a judgment against Moffett and Hodgkins for the sum of $5,121.82, which represented the amount of such deficiency as limited by the condition of the undertaking, together with interest and costs. Thereafter Fitzgerald caused an execution to be issued to the sheriff of Jefferson county against the property of the appellant, Moffett, which in due course of time was returned to the clerk of that county wholly unsatisfied. In the meantime Moffett had removed to the state of Massachusetts, and in February, 1901, an action upon such judgment was brought in that state, and a recovery had, whereupon Moffett was examined in the poor debtor session of the municipal court of the city of Boston, which proceeding is virtually the same as that authorized in this state supplemental to execution; and upon such examination, which was extended and exhaustive, he testified that at the time of executing the undertaking he owned no real estate in Jefferson county, and that he had been wholly insolvent since 1898. Upon the evidence thus taken, together with the affidavits appearing in the record, an order was obtained requiring the appellant to show cause at a special term of the supreme court why he should not be punished for contempt; and upon the return of that order, and after hearing counsel for the respective parties, the order appealed from was granted.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

S. E. Filkins, for appellant.
C. J. Shearn, for respondent.

ADAMS, P. J. That the appellant, when he declared under oath that he was a freeholder of the county of Jefferson, and worth $10,000, over and above all his debts and liabilities, committed a deliberate and willful falsehood, is too clearly established to admit of discussion. That such false swearing was committed for the express purpose of deceiving the court, and inducing it to adopt a course of procedure which would not otherwise have been adopted, is equally plain. And it having been adjudged by the court at special term that this misconduct upon the part of the appellant was of such character as to defeat, impair, impede, or prejudice a right or remedy of a party to a civil action or special proceeding, it follows that he has been guilty of a civil contempt, which subjects him to punishment, and requires that he be dealt with as summarily as a proper regard for legal procedure will permit. Code Civ. Proc. §§ 14, 2266, 2287; Boon v. McGucken, 67 Hun, 251, 22 N. Y. Supp. 424; In re Hay Foundry & Iron Works, 22 App. Div. 87, 47 N. Y. Supp. 802; Association v. Kuhn, 51 App. Div. 583, 64 N. Y. Supp. 933.

With the preliminary feature of the case thus disposed of, it remains only to determine whether the punishment inflicted by the court below is within the rule prescribed by the law of this state. In passing to a consideration of this question, it is to be noted that it is a civil, and not a criminal, contempt, of which the contemner

in the present instance has been found guilty; and while in either case the court is interested in dealing summarily with those who defy its authority, or change the course of its procedure by any fraudulent device or scheme, yet in a proceeding for a civil contempt the party more immediately concerned is the one who has suffered some injury or loss by reason of such misconduct. It is mainly for his protection and indemnity that the punishment is inflicted, and it was doubtless with this design that the legislature enacted section 2284 of the Code of Civil Procedure, which provides that:

"If any actual loss or injury has been produced to a party to an action or special proceeding, by reason of the misconduct proved against the offender, and the case is not one where it is specially prescribed by law, that an action may be maintained to recover damages for the loss or injury, a fine sufficient to indemnify the aggrieved party must be imposed upon the offender, and collected and paid over to the aggrieved party, under the direction of the court. * * * Where it is not shown that such an actual loss or injury has been produced, a fine must be imposed, not exceeding the amount of the complainant's costs and expenses. and two hundred and fifty dollars in addition thereto, and must be collected and paid in like manner. * * *"

This provision, therefore, must be our guide in determining the question under consideration.

In view of the undisputed facts of the case, it will not, we assume, be seriously contended that the contemner's misconduct has not resulted in some actual loss or injury to the plaintiff in the action, and to the petitioner, as its assignee. In the most favorable view which can possibly be taken of Moffett's conduct, it must be admitted that it caused a delay in the sale of the mortgaged premises of more than 14 months, which circumstance, of itself, it is fair to infer, had something to do with the amount of the deficiency which subsequently arose. There was also the additional expense incidental to the appeal, and which in all probability would not have been incurred but for the stay of proceedings which the undertaking in question made possible, so that it is apparent that this is not a case which calls simply for a fine of $250 and costs, as provided in the last paragraph of the section above quoted. On the contrary, it necessarily follows, as we think, that, with the contempt established, the only fine which could have been legally imposed was one which should be sufficient in amount to fully indemnify the aggrieved party for the actual loss or injury sustained by him, or at least for such portion thereof as was embraced within and covered by the condition of the bond. The special term has found that such loss was the amount of the deficiency arising upon the sale of the mortgaged premises, and this finding, subject to the modification hereinafter mentioned, meets with our approval. In proceedings of this nature it is not always easy to ascertain the actual loss sustained in consequence of the misconduct of a party which amounts to, and has been adjudged to be, a contempt of court; but, like any other claim for damages, it is something which must be established by proof. Moffat v. Herman, 116 N. Y. 131, 22 N. E. 287; Dejonge v. Brenneman, 23 Hun, 332. The present case, however, is relieved of the embarrassment ordinarily attending efforts of this nature by the action of the contemner himself; for he not only undertook to pay

all costs and damages which might be awarded against the appellants in the action in which the appeal was taken, but he also, in express terms, and as a condition of obtaining a stay of proceedings in the foreclosure suit, obligated himself to pay any deficiency which might arise upon the sale of the mortgaged premises, not exceeding $5,000. Manifestly the undertaking in this form was required by the court solely as an indemnity to the plaintiff in the action. Without it no stay of proceedings would have been granted, and when the stay was granted the undertaking became, in effect, an additional security in the hands of the plaintiff, and one which was absolute in its terms, and dependent upon nothing for its compensatory quality save the existence of a deficiency and the responsibility of the obligors. Consequently when it turned out that the sureties had sworn falsely, and that their obligations were worthless, it seems quite clear that the actual loss sustained by the plaintiff was the amount the undertaking was supposed to secure, namely, the deficiency arising upon the foreclosure sale, and that nothing less than this would fully indemnify the aggrieved party. It is conceded that for so much of that sum as was covered by the undertaking, together with costs, judgment was subsequently obtained against Moffett in an action thereupon; and, in our opinion, both principle and precedent furnish ample reason for holding that such judgment established a correct basis upon which to determine the amount of the plaintiff's loss, and consequently the amount of the fine which might be properly imposed. In re Hay Foundry & Iron Works, supra; King v. Flynn, 37 Hun, 329; In re Hopper, 9 Misc. Rep. 171, 29 N. Y. Supp. 715; Martin Cantine Co. v. Warshauer, 7 Misc. Rep. 412, 28 N. Y. Supp. 139; Diamond v. Knoepfel, 3 N. Y. St. Rep. 291; Hull v. L'Eplatinier, 5 Daly, 534.

By some process which is not made entirely clear to us, the court below reached the conclusion that Moffett's misconduct resulted in a loss or damage to the petitioner of at least $6,000, and it consequently imposed a fine for that amount. We are inclined to think that this was error, but, inasmuch as a reduction of the fine may undoubtedly be made in appropriate cases by the appellate court (Clark v. Bininger, 75 N. Y. 344; Dejonge v. Brenneman, supra), the error is one which can be easily corrected by reducing the fine to the amount of the recovery in the action upon the bond, viz., $5,121.82, and the order should be modified to that extent.

This is not a case in which the court should struggle to relieve the appellant from the difficulty in which he has placed himself. The contempt with which he stands charged was flagrant in the extreme, and without any mitigating circumstances. As was said by Ingraham, J., in a somewhat similar case:

"It is time that parties who engage in such an attempt to deceive the court, and induce it to adopt a course which results in defrauding one whom the court is bound to protect, should be summarily dealt with, and taught that, if such a scheme is successful, it involves consequences much more serious than the payment of the amount of which a party is defrauded." In re Hay Foundry & Iron Works, supra.

This language is not inappropriate to the case in hand.

Order modified by reducing the amount of the fine imposed to the sum of $5,121.82, and as thus modified affirmed, without costs of this appeal to either party. All concur, except WILLIAMS, J., dissenting in an opinion.

WILLIAMS, J. (dissenting). It seems to me that error was committed by the court below in proceeding summarily to adjudge the appellant guilty of contempt, and in not ordering a reference as to the facts; but inasmuch as my Brethren are all against me upon this question, and the court of appeals would not review us as to this part of the order, it would be useless for me to write anything upon this branch of the case. As to the amount of the fine imposed, however, I am of the opinion there was no basis in the evidence for fixing any such amount; and inasmuch as this court may be reviewed upon this question, I desire to express my views with reference thereto.

The contempt of which the appellant was adjudged guilty consisted in his swearing falsely to an affidavit accompanying an undertaking given to procure a stay of proceedings upon a judgment pending an appeal to the court of appeals. The affidavit was, in effect, that he (one of the sureties in the undertaking) was a freeholder, and was worth $10,000, whereas, in truth, he was not a freeholder, and was insolvent. The judgment appealed from was one affirming in the general term a judgment directing the foreclosure and sale of mortgaged premises. The general term judgment was entered June 24, 1896. The undertaking was given and the stay procured January 13, 1899. Judgment was entered upon affirmance in the court of appeals March 14, 1900. The undertaking was to the effect that the defendants would pay costs and damages, not to exceed $500, and any deficiency that might occur on the sale, in case of affirmance in the court of appeals. There was a deficiency on the sale of $6,688.95, including costs, as finally ascertained, and judgment therefor was entered against the defendant gas company July 10, 1900. An action was commenced against the sureties upon the undertaking, and resulted in a judgment against them of $5,121.82 on the 5th day of December, 1900. The appeal to the court of appeals was by both defendants,—the gas company and the trust company,—and the undertaking was that both defendants would pay the costs and the deficiency. The undertaking was given as sureties for both defendants at their request, and upon their application for the stay. Both defendants were therefore principals, and were liable as such to the plaintiff for the costs and deficiency; the parties giving the undertaking became sureties, merely. The gas company was also liable by reason of the deficiency judgment against it. There was no proof given at the hearing in the court below as to what damages were actually suffered by the plaintiff, by reason of the stay of proceedings and sale of the property, from January 13, 1899, when the stay commenced, until March 14, 1900, when it terminated. There was no proof that the deficiency judgment had not been paid by the defendants, or either of them, or that they were not responsible; that the

judgment was not collectible from them, or either of them. There was no proof that any attempt had even been made to collect the deficiency judgment from the defendants, or either of them. It was merely made to appear that the judgment against the sureties was not collectible. So far as appears, the plaintiff lost nothing, because its deficiency judgment was collected or was collectible from the principals of the undertaking.

The amount of the fine was fixed under section 2284, Code Civ. Proc., which, so far as applicable here, reads as follows:

"If any actual loss or injury has been produced to a party to an action * * * by reason of the misconduct proved against the offender, a fine, sufficient to indemnify the aggrieved party, must be imposed upon the offender, and collected and paid over to the aggrieved party under the direction of the court. The payment and acceptance of such a fine constitute a bar to an action by the aggrieved party, to recover damages for the loss or injury. * *. * Where it is not shown that such an actual loss or injury has been produced, a fine must be imposed not exceeding the amount of the complainant's costs and expenses, and $250.00 in addition thereto, and must be collected and paid in like manner."

The order appealed from, which imposed the fine, adjudged that the plaintiff's assignee had been damaged in the sum of $6,000, and that the fine imposed be paid over to him. The fine was therefore fixed under the first clause of the section quoted, and not under the second one. It is well settled that, in order to justify the imposition of a fine under this clause of the statute, the amount of actual loss or injury must, according to the rules of law which apply in an action for such damages, be proved and established, and then the amount of the fine must be sufficient to indemnify the aggrieved party. No exemplary damages can be allowed, and nothing can be allowed under the second clause of the statute. Association v. Kuhn, 164 N. Y. 473, 58 N. E. 649; Moffat v. Herman, 116 N. Y. 131, 22 N. E. 287; Sudlow v. Knox, 7 Abb. Prac. (N. S.) 411; Id., 4 Abb. Dec. 326; Clark v. Bininger, 75 N. Y. 344; People v. Anthony, 151 N. Y. 620, 45 N. E. 1133; Id., 7 App. Div. 132, 40 N. Y. Supp. 279; Railroad Co. v. Ramsey, 45 N. Y. 637.

In Sudlow v. Knox, supra, Grover, J., laid down the rule upon this subject (under the statute prior to, but the same as, the Code) which has since been uniformly adopted, as follows:

"The accused is to be fined such a sum as will compensate for the damages sustained by the party from the misconduct. These damages must be ascertained by the like evidence, to which are to be applied the same rules of law as upon the trial of an action brought for the injury."

The same idea is suggested by the provision of the Code, in section 2284:

"The payment and acceptance of such a fine constitute a bar to an action by the aggrieved party, to recover damages for the loss or injury."

If the penalty imposed, paid, and received is to be in lieu of the damages recoverable in an action, and in bar of such an action, then the rule and measure of damages should be the same as in the action. The only theory upon which it could be claimed that the false affidavit produced any loss or injury to the plaintiff was that it resulted in a

stay of the sale, and consequent loss and injury to the plaintiff, in that there was a less amount finally realized than there would have been if the stay had not been obtained. If the stay had not resulted, no loss or injury would have followed. If the property sold to better advantage after the stay terminated than it would have done if there had been no stay, then no loss or injury resulted. Suppose the plaintiff or its assignee, instead of instituting this proceeding, had brought an action to recover damages for the loss and injury resulting from the making of this false affidavit, and upon the trial it had not been made to appear that a stay was procured by the making of the affidavit; could any recovery have been had? would any damage have been established? Or supposing the stay had been procured, but no proof had been given that a less amount was realized upon the sale after the stay terminated than would have been realized if there had been no stay; could any recovery have been had? would any damages have been established? The answer to these questions must be in the negative, and the same suggestions are applicable here. No such proof was given or suggested upon this hearing. This was not the theory upon which the court proceeded in fixing the amount of the fine. On the contrary, the theory was that the loss or injury to the plaintiff was the whole amount recoverable under the undertaking, which, if the affidavit had been true, would have been collectible, but which, being untrue, was lost to the plaintiff or his assignee. The affidavit could not make the undertaking a good, collectible one. The appellant was insolvent and wholly irresponsible when the affidavit was made, and the affidavit in no way changed his financial condition. The only result of the affidavit was to procure a stay. And the loss or injury to the plaintiff or its assignee was such as resulted from the stay, and as would not have been suffered if there had been no stay. It seems to me that a mere statement of these propositions settles the question, and shows the erroneous theory upon which the amount of the fine was arrived at. In all the cases above cited, and in many others hereafter referred to, the amount of the fine was fixed at such sum as would have been recoverable in an action; and, when nothing was so recoverable, no fine was imposed under the first clause of the statute, but only the $250 and costs and expenses of the proceeding, under the second clause of the statute. In 164 N. Y., and 58 N. E., supra, while it was stated that the acts complained of "did defeat, impair, impede, and prejudice the rights and remedies of the plaintiff," still the order did not otherwise state the actual loss or injury to the plaintiff, nor any items from which the amount thereof could be computed or inferred, and therefore only the $250 was imposed as fine. The contempt complained of there was the violation of an injunction. In 116 N. Y., and 22 N. E., supra, where the contempt complained of was falsely verifying and interposing an answer, the court below found that, by reason of misconduct, plaintiff was prevented from collecting his judgment, and fined the defendant the full amount thereof,—$1,-132.32. The court of appeals held that this was not permissible, because, as a matter of fact, the misconduct did not produce such result; that, while the verifying and serving of the answer postponed

for a few days the obtaining of a judgment, the defendant was not thereby enabled to dispose of his property, because when the answer was served he had no property to dispose of,—he had already conveyed it away; and that the proof before the court therefore utterly failed to establish that damage was sustained in an amount equal to the sum due upon their judgment, or in any sum whatever, by the alleged misconduct, and only a $250 fine could be imposed. In 75 N. Y., and in 151 N. Y., and 45 N. E., supra, the contempts complained of were the refusal of receivers to pay over moneys as directed by the orders of the court. The fines imposed were the amounts of money so directed to be paid over. These were the amounts that could have been recovered if action had been brought, instead of instituting the contempt proceedings. In 45 N. Y., supra, the contempt was committed in the violation of injunctions issued by the court. The court ordered a reference to ascertain plaintiff's damages, and the referee reported they were $5,325; and this amount was imposed as a fine, together with $500 for counsel fees. The damages found by the referee were largely for services of counsel. The general term on appeal reduced the fine to $250, and the court of appeals held the papers showed no actual loss or injury beyond the $250.

There have been many cases where the contempt consisted of making false affidavits in justifying as sureties upon bonds to procure the discharge of mechanics' liens and the liens of judgments and attachments, and in all these cases the fines imposed have been the amounts of the liens discharged upon the strength of the bonds. The liens were entirely lost. The damages recoverable in actions brought for such wrongs would have been the same. That was the rule stated in Re Hay Foundry & Iron Works, 22 App. Div. 87, 47 N. Y. Supp. 802,—a decision in which I took part and concurred. In Nathans v. Hope, 5 Civ. Proc. R. 401, the contempt was the same as in our case,—the making of a false affidavit in justifying as surety upon an undertaking given to stay proceedings on appeal to the court of appeals. The affidavit was untrue, in that the surety was wholly insolvent. The judgment in the general term was $3,139.02, with $7,493 costs. The stay was granted April 30, 1878. The affirmance in the court of appeals was June 18, 1879, and $111.50 costs were added in that court. An action was then brought against the sureties on the bond, and a judgment recovered for $4,082.67, and execution issued, and returned wholly unsatisfied. It was proved in that case that, when the undertaking was given and the stay procured, the defendant in the judgment was solvent, and the judgment could thus have been collected, but during the time the stay was in force the defendant became insolvent, and the judgment wholly uncollectible. By reason of the stay, plaintiff lost his whole judgment. Upon such evidence the court was authorized to do as it did,—impose a fine equal to the full amount of the judgment stayed, which was the same as the judgment recovered against the sureties on the undertaking. That was an application of the rule as I claim it is. There was proof of the actual loss or injury to the plaintiff. Suppose, however, there had been

no proof that the judgment became valueless during the time of the stay; could the fine have been fixed at the full amount of the judgment? Clearly not. There could be no presumption that the defendant was solvent and able to pay the judgment when the stay was obtained, and became insolvent during the continuance of the stay, and the mere fact that the undertaking was not collectible did not establish his loss or injury at the amount of the judgment recovered thereon. In Burnham v. Denike (Sup.) 65 N. Y. Supp. 1028,. the contempt consisted in a refusal to comply with an order of the court requiring a purchaser to complete a purchase of property bid in by him at a referee's sale under a judgment in partition. The punishment prescribed for the contempt was that he pay the balance of the purchase price, and comply with the other directions in the order. The court (Second department, appellate division) held that there was no evidence from which it could be inferred that the respondent had been damaged to the amount of the unpaid portion of the purchase price; that the amount of the fine imposed for the purpose of indemnifying the person aggrieved must be based upon proof of the damage actually sustained,—citing 116 N. Y. and 22 N. E., supra. And there was no legal evidence to show that the respondent had suffered any damage by reason of the failure of the appellant to complete the purchase of the property; that he had paid 10 per cent. of the purchase price at the time of the sale, and there was nothing in the record to show that the property had deteriorated in value, or that any expense had been incurred that could not be paid out of the amount that had been advanced; that the terms of sale provided for resale, and that the first purchaser be liable for any deficiency and for costs and expenses of the resale; and if the property had been resold, and had brought more than the price bid on the first sale, there would have been no damage; and, if it had brought less, the measure of damages would have been the difference between the two prices, with costs and expenses of resale; and, in the absence of any evidence, the damages could not be adjudicated, a fine imposed, or the party imprisoned; that the fine could only be fixed upon proof of the damages sustained. I have been able to find no authority in support of the respondent's theory of fixing the amount of this fine, excepting the two cited by him in his points. Diamond v. Knoepfel, 3 N. Y. St. Rep. 291 (McAdam, C. J.; special term, city court, N. Y.); Hull v. L'Eplatinier, 5 Daly, 534 (Daly, J.; common pleas, general term, N. Y.). And these cases have never been followed, so far as I can discover. They were not well considered, were in conflict with the statute and with all the cases I have examined, and should not be followed by this. court. The other cases cited in the prevailing opinion as authority for fixing the damages at the amount of the judgment recovered upon the undertaking do not hold any such rule as to the measure of damages. The plaintiff did not lose a good undertaking, because it never had a good undertaking to lose. It was worthless all the time.

I have referred to a sufficient number of authorities to show that the real measure of damages which should govern in fixing the amount of the fine in this case is the loss or injury sustained by

the plaintiff or his assignee by reason of the stay of proceedings obtained on the strength of the worthless undertaking, and there is no basis in the evidence for arriving at the amount of such loss or injury. The judgment in general term was entered June 24, 1896. Yet for some reason no attempt was made to sell the property from that time until January 13, 1899, when the stay in question was obtained,—a period of 2 years and 6 months. The stay continued from January 13, 1899, to March 14, 1900,—a period of 1 year and 2 months. There is nothing in the record to show the property deteriorated in value during that 14 months, or that as large a sum was not realized from the sale when finally made as would have been realized if no stay had been obtained. Certainly there is nothing to show, or from which any inference can be drawn, that the loss or injury suffered by the plaintiff or its assignee, and occasioned by the stay, was $6,000, or anything like that amount. So far as appears, the deficiency arising from the sale was no larger than it would have been if the stay had not been had, and the property had been sold whenever the plaintiff saw fit to have it take place. The sale had been delayed 2 years and 6 months before the stay was obtained. How could the court say from anything in the record that a stay for an additional 14 months occasioned loss or injury to the plaintiff or its assignee of $6,000, or $5,121.82? There is no basis in the evidence for any such conclusion. And, as already stated, so far as appears, the plaintiff suffered no damage, because its beneficiary judgment was collected or was collectible from the principals in the undertaking.

For the reasons hereinbefore suggested, I think the order appealed from should be reversed, and a reference ordered as to the loss or injury, if any, suffered by the plaintiff by reason of the contempt complained of; and, in case a reference is to be ordered at all, the appellant should be allowed to give such evidence as he desires as to the contempt himself; the respondent also having the same privilege.

Order modified by reducing the amount of fine imposed to the sum of $5,121.82, and, as thus modified, affirmed, without costs of this appeal to either party.