## DOLLARD v. KORONSKY et al.

### In re BLOCH.

(City Court of New York, Special Term. October 6, 1909.)

1. CONTEMPT (§ 4*)—CIVIL CONTEMPTS—ELEMENTS.
   The elements essential to a civil prosecution for contempt of court are an offense within Code Civ. Proc. § 14, defining contempts punishable civilly, or, under the common law, the operation of that offense to impair, prejudice, or defeat the rights or remedies of the adversary, the further operation of that offense to cause actual loss or injury to the adversary who is without statutory remedy to recoup his damages.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. CONTEMPT (§ 4*)—CIVIL CONTEMPTS—ELEMENTS.
   . Code Civ. Proc. § 14, defining contempts punishable civilly, includes offenses which are contempts under the common law, and at common law the offense of contempt is the tendency thereof to obstruct the administration of justice in a pending cause, thereby rendering nugatory the court's decree and bringing it into disrepute.

   [Ed. Note.—For other cases, see Contempt, Dec. Dig. § 4.*

   For other definitions, see Words and Phrases, vol. 2, pp. 1489–1492; vol. 8, p. 7614.]

3. CONTEMPT (§ 16*)—CIVIL CONTEMPTS—ELEMENTS.
   Under Code Civ. Proc. § 14, defining contempts punishable civilly, a surety on a court undertaking, conditioned for the payment of a judgment in case the same is not set aside in proceedings therefor, who disposes of all his property pending the proceedings with the deliberate intent of making his obligation nugatory, is guilty of contempt because his act is an interference with the administration of justice.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 45–47; Dec. Dig. § 16.*]

4. CONTEMPT (§ 37*)—CIVIL CONTEMPTS—ELEMENTS.
   It is not a prerequisite to punishment for contempt under Code Civ. Proc. § 14, defining contempts punishable civilly, that the moving party shall have first exhausted his other remedies at law for recouping his damages.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 111–116; Dec. Dig. § 37.*]

5. CONTEMPT (§ 53*)—PROCEEDINGS—SUMMARY PROCEEDINGS.
   A surety on a court undertaking, conditioned for the payment of a judgment in case the same is not set aside in proceedings therefor, who, pending the proceedings, disposed of all his property with the deliberate intent of making his obligation nugatory, may be summarily proceeded against for contempt.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 142; Dec. Dig. § 53.*]

6. CONTEMPT (§ 75*)—PUNISHMENT—INDEMNITY.
   Under Code Civ. Proc. § 14, defining contempts punishable civilly, and section 2284, providing that the amount of the fine to indemnify the person aggrieved must be fixed on proof of the damages sustained, a surety on a court undertaking, conditioned for the payment of a judgment, who renders his obligation nugatory by his disposing of all his property, may be punished by a fine in a sum including the amount of the undertaking and the amount of the legal expenses and counsel fees incurred in prosecuting the contempt proceeding.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 258–260; Dec. Dig. § 75.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Albert H. Dollard against Benjamin Koronsky and another. Motion by plaintiff to punish Max E. Bloch, a surety on an undertaking, for contempt. Motion granted.

See 61 Misc. Rep. 392, 113 N. Y. Supp. 793; 118 N. Y. Supp. 1103.

Allen & Sabine (Yorke Allen, of counsel), for the motion.
William A. Sweetser, opposed.

DELEHANTY, J. This is a motion by plaintiff, to adjudge guilty and punish as for a contempt of court Max E. Bloch, a surety upon an undertaking ordered by the court to be given for the protection of the plaintiff as a condition of releasing by the court of a levy of an execution against the property of Benjamin Koronsky in plaintiff's favor, for the offense of fraudulently divesting himself of his property for the unlawful purpose of making nugatory the said protectory provision of said order and of impairing, impeding, prejudicing, and defeating plaintiff's lawful rights and remedies in this action.

A chronological history of the events incident to this action is necessary to a complete understanding of the application now before me. The action is for goods sold and delivered to the defendants, and resulted, on his default in appearance, in a judgment for plaintiff against Benjamin Koronsky for $1,210.03. An execution was thereafter duly issued to collect said judgment, and a levy thereof duly made on certain property of the defendant Benjamin Koronsky. On the day following the levy in question the said Benjamin Koronsky obtained ex parte an order of this court requiring plaintiff to show cause why said judgment and levy should not be set aside as a matter of right for want of service of summons and complaint on or jurisdiction over the person of said Benjamin Koronsky, and also staying all proceedings on the part of plaintiff and the sheriff to enforce the levy in question. On the return of said order an order was made referring the issues of fact as to service of process, and directing that the levy of execution be set aside pending the said inquiry, upon the furnishing by said defendant, for the protection of this plaintiff, of an undertaking conditioned for the payment of said judgment and the expenses of said reference (all not to exceed $1,400) in case said judgment should survive the said proceedings to set aside. In compliance with said order and for the purpose of releasing the levy in question, Max E. Bloch above named and one Benjamin E. Davis made and filed in this court an undertaking in the usual form containing the conditions required by the said order of vacatur. Before said Bloch, however, was accepted as surety, he was compelled to, and did, make a supplementary affidavit of justification. Thereupon the levy was released. Thereafter the referee duly reported that said summons and complaint had been served on said Benjamin Koronsky, and upon application duly made said report was confirmed, the stay dissolved, and denying, with $10 costs and $928 disbursements for referee's and stenographer's fees, the said motion to vacate said judgment. Thereafter, by order of this court, the said Benjamin Koronsky was adjudged guilty of contempt for procuring said stay by perjury and deceit, and fined in the sum of $1,759.46 for the benefit of plaintiff, to

reimburse him for expenses to which he was put in procuring the dissolution of said stay. The opinion of the court in that matter is officially reported in 61 Misc. Rep. 392, 113 N. Y. Supp. 793, and has been affirmed on appeal therefrom by the Appellate Term (without opinion) and Appellate Division (118 N. Y. Supp. 1103), respectively. During the course of the above events Benjamin Koronsky transferred to the said Bloch all his property, including that which had been released from the lien of the levy. Executions having thereafter been issued for the collection of the judgment and contempt costs, and each having been returned wholly unsatisfied, an action was commenced against the surety Bloch on the undertaking in question, which resulted in a judgment against him for $1,498.87, made up as follows: Plaintiff's judgment against Koronsky, $1,210.03; expenses of reference, to the extent secured by undertaking, $189.97; interest, $18.64; costs, $80.23—$1,498.87. Said judgment was appealed from, but was unanimously affirmed by the Appellate Term. Thereafter execution thereupon was duly issued and returned wholly unsatisfied. The plaintiff then resorted to supplementary proceedings, under which the said Bloch was duly examined and a receiver of his property thereafter appointed. The receiver has been unable to discover any tangible property belonging to the said Bloch which could be applied in satisfaction of the whole or part of the judgments against him.

It appearing that said Bloch is in receipt from a commercial house in this city of a salary of $27 a week for services as bookkeeper, execution under section 1391 of the Code of Civil Procedure was duly issued requiring the sheriff of this county to collect from his employers out of said salary, as the same should accrue, the sum of $2.70 in each and every week, and to apply the same, after deducting his lawful fees therefor, to the satisfaction of the judgments in question. Thus far the sheriff has collected in the neighborhood of $30. Davis, the co-surety of Bloch, died during the proceedings above narrated, intestate and insolvent. Benjamin Koronsky has become a voluntary bankrupt, with plenty of liabilities, but no assets whatever, except two suits of clothes, for which he claims exemption. Pertinent to the application now before me, it appears from Bloch's examination in supplementary proceedings: That at the time that he went on the undertaking in question and justified as surety thereon he was the owner of the following property, with no debts or liabilities whatsoever: One-third interest in an equity in No. 279 Avenue B, borough of Manhattan, said equity being worth $1,300; claims against B. Koronsky & Son for moneys loaned to them, $2,000; equity in Jamaica real estate worth $250; cash in savings bank, $250. Also, that between then and his examination in said proceedings he had earned and received an additional $900—$4,700. And, further, that during the progress of all the proceedings against Koronsky he, Bloch, was kept fully informed thereof by the son of said Koronsky. That between the time when he, Bloch, executed the undertaking and the time when plaintiff took his judgment against him thereon, said Bloch disposed of all his property which he so had at the time of his qualification and of all which he had since so acquired, and now has no property of any value, and is unable to pay anything on account of his obligation. His examina-

tion further shows that after he had been sued on the undertaking, and about a month before the cause came to trial, he loaned to Mollie Koronsky $1,000 in cash, the last property he had in the world save the equity in the Jamaica lots, which he later sold for $100. Mollie Koronsky is the wife of the defendant Benjamin Koronsky, and the loan in question was made on her unsecured note, she not being in business or having any property that he knew of; that he "suspected" that the money was "wanted" to help Koronsky's legal defense against the plaintiff; that the transaction took place in the $20 a month tenement apartment occupied at the time by the Koronskys and their six children; that shortly before the referee in the Koronsky case made his report that he, Bloch, disposed of his interest in the Avenue B property, which originally cost him $1,300, for $800; that of that amount he loaned to B. Koronsky & Son $750 in cash, for which he afterwards accepted 30 shares of stock of the now incorporated B. Koronsky & Son of the par value of $25 each; that those shares he afterwards sold for $300 cash, of which amount he paid $50 on a doctor's bill, and as for the rest he is unable to make an accounting; that for a release of the $2,000 owed to him by the Koronskys and a cash contribution of $1,000 he purchased $3,000 of stock of the corporation of B. Koronsky & Son, and shortly after the commencement of the suit against him on the undertaking he sold the same to a friend of the Koronskys for $1,400 in cash; that of this amount he loaned to Mollie Koronsky, as above stated, $1,000, and of the balance he expended $125 for clothes and small debts, but knows not what he did with the remainder; that the equity in the Jamaica lots he sold for $100 eight days before the trial of the action on the undertaking; that the $250 he had in the bank went towards $300 he paid in advance to his lawyer to cover services, not only at the trial, but also on appeal, "if there should be one"; that the $900 of earnings all went into living expenses, amusements, gambling, etc., at which latter he lost to various persons, including his lawyer and the lawyer of one of the transferees of his real property, between $500 and $600.

Thus disappears every dollar that Bloch swore that he had when accepted as a surety on the undertaking in question, and all that he had earned subsequent thereto. Prior to his becoming involved with the Koronskys, Bloch was of a money getting, saving, and penurious nature, but thereafter, when his obligation is enforced, it is learned that all this has changed, and that he has become a profligate in every sense of the word. On the return of this order he was given full opportunity to answer the allegations of fraud and interference, but his affidavits submitted thereon have wholly failed to do so. While it is true, as claimed, that some of the testimony in supplementary proceedings was taken in the absence of Bloch and is not therefore strictly binding upon him as of that time, yet he has failed to meet the adverse portions thereof on this application.

Does, therefore, the conduct of Bloch in so disposing of his property constitute a civil contempt of court punishable summarily? That is the question to be determined hereon. There are four elements essential to the prosecution of contempts, and these are: (1) An offense within the definition of section 14, Code Civ. Proc., or of the common law;

(2) the operation of that offense to cause impairment, prejudice, or defeat to right and remedies of the adversary; (3) the further operation of that offense to cause actual loss or injury to the adversary; (4) that there be no other remedy for recoupment prescribed by law, which means of course statute law. Dollard v. Koronsky, 61 Misc. Rep. 392, 398, 113 N. Y. Supp. 793, affirmed by App. Term and App. Div. At common law the offense of contempt has been held to be the tendency thereof to obstruct the administration of justice in a pending cause, thereby rendering nugatory the court's decree, and bringing it into disrepute and disrespect among men. For instance, in Saal v. South Brooklyn Ry., 122 App. Div. 364, 368, 106 N. Y. Supp. 996, 1000, it is said that, "to constitute a constructive contempt of court, some act must be done not in the presence of the court or judge that tends to obstruct the administration of justice or bring the court or judge or the administration of justice into disrespect." That section 14 of the Code includes within its purview all offenses which are contempts under the common law is well settled. In People v. Court of Oyer & Terminer, 101 N. Y. 246, 250, 4 N. E. 259, 261, 54 Am. Rep. 691, the court, in referring to the section named, states that:

"By this clause the common-law right as to private contempts was preserved outside of and beyond the statute enumeration, and this was deemed safe and prudent, because in cases affecting only private rights and wrongs done merely to the suitor the courts would be under little or no temptation to unduly strain or exercise their power."

And to the same effect People v. Rice, 144 N. Y. 249, 263, 39 N. E. 88, and People v. Platzek (Sup.) 117 N. Y. Supp. 852.

But by its very terms the section, at subdivision 4, also defines a contempt as including "any other unlawful interference with the proceeding therein." Accordingly it has been held that a transfer of property for the purpose of rendering nugatory an equity decree about to be rendered is an unlawful interference, and as such a contempt. Greite v. Hendricks, 71 Hun, 11, 13, 24 N. Y. Supp. 546. So also in People v. Kearney, 21 How. Prac. 74, it was held a contempt for one sued for the custody of children to pendente lite deliberately send them to a foreign country, so that it would be beyond his power to comply with such judgment as should be rendered. And this is rightly so on the broad principle that it is the duty of the court to protect its suitors as well as to punish its offenders. A court without this power would be an anomaly in legal jurisprudence. Viewing the testimony of the surety Bloch in the light of the authorities cited, the conclusion is irresistible that he disposed of his property as aforesaid with the deliberate intention of making his obligation nugatory, and he has succeeded in so doing. His conduct, therefore, was a direct interference not alone with this action, but with the ultimate proceedings in aid of the judgment. It was an interference which impeded the administration of justice, and impaired and in the end actually defeated the right of the plaintiff; and in my opinion was planned and intended to effect just that result, and clearly comes within the provisions of the Code defining a civil contempt. It is apparent that no other remedy at law exists whereby plaintiff can recoup his damages herein. But,

assuming that there is, it is not a prerequisite to punishment for contempt that he shall first have exhausted those remedies.   Matter of Goslin, 95 App. Div. 407, 409, 88 N. Y. Supp. 670, affirmed 180 N. Y. 505, 72 N. E. 1142.

This brings us, then, to the question of the punishment to be accorded for the offense so committed.   The conduct of Bloch in the disposition of his property and his apparent perjurous testimony to lend legal semblance thereto affects not only the honor and dignity of the court's decree, but also the value of the protection given to the plaintiff thereby.   If conduct such as this is not summarily met with and condemned in severest terms, then indeed will the administration of justice by its proper officers be brought into well merited disrepute among men.

It is urged, however, that, if the court upon the papers presented construes the conduct of Bloch as contemptuous, then he is entitled as a matter of right to a reference to determine whether the acts alleged constituting such contempt be true or not.   There is no valid basis for a claim of this kind.   In Buffalo, L. T. & S. D. Co. v. Medina G. & E. L. Co., 68 App. Div. 414, 420, 74 N. Y. Supp. 486, 490; which was a proceeding to punish for an offense of false justifying by a surety, a reference was demanded and refused.   The court there very pertinently said:

"This is not a case in which the court should struggle to relieve the appellant from the difficulty in which he has placed himself.   The contempt with which he stands charged was flagrant in the extreme and without any mitigating circumstances.   As was said by Ingraham, J., in a somewhat similar case (Matter of Hay, Foundry & Iron Works, 22 App. Div. 87, 47 N. Y. Supp. 802): 'It is time that parties who engage in such an attempt as this to deceive the court and induce it to adopt a course which results in defrauding one whom the court is bound to protect should be summarily dealt with and taught that, if such a scheme is successful, it involves consequences much more serious than the payment of the amount of which a party is defrauded.'"

My conclusion, therefore, is that a fine must be imposed in this case, with imprisonment until the same is paid, in addition to a separate term of imprisonment whether the fine is liquidated or not. Concerning the amount of the fine section 2284 of the Code of Civil Procedure provides that the fine shall be "sufficient to indemnify the aggrieved party," and thereof it has been written:

"The amount of the fine to indemnify the person aggrieved for the loss or injury must be fixed upon proof of the damages sustained, according to the rules of law which would apply in an action for such damages."

See, also, Burnham v. Denike, 53 App. Div. 407, 409, 65 N. Y. Supp. 1028.

The indemnity referred to includes legal expenses and counsel fees on the contempt proceedings found on evidence to be rendered in fact and reasonable in amount.   Whitman v. Haines, 51 Hun, 640, 4 N. Y. Supp. 48, affirmed 119 N. Y. 639, 23 N. E. 1148; Dollard v. Koronsky, supra.   It is conceded that the amount adjudged to be due on the undertaking in question is $1,400.   It is further conceded in the absence of a specific denial thereof that counsel for the moving party herein has been occupied 24 days in preparing for and conducting these

contempt proceedings. That such time has been honestly and well spent is evidenced from the voluminous and well-prepared papers presented hereon. A fee of $30 a day for such labor is not unreasonable, and has been adjudicated just and allowable in the case of Dollard v. Koronsky, supra. The amount of the loss and injury to plaintiff occasioned by the conduct of the surety Bloch is therefore $2,120, which sum will constitute the fine imposed herein; and, when the same is paid, the sheriff will return to the said Bloch the amount collected on the salary execution, less his lawful commissions thereon. If said fine is not paid within 10 days after entry of order hereon and service of copy thereof, with notice of such entry, a close commitment will issue. In addition thereto an absolute imprisonment of two months is hereby imposed upon the said Bloch.

In conclusion let it be said that a further duty rests upon the plaintiff herein. The zeal with which he has prosecuted this matter for the lasting benefit of the law and the honor of the courts should inspire him to go further, and bring to the attention of the Appellate Division of this department the reprehensible conduct of Bloch's "regular" lawyer, so called, and also that of the lawyer who appealed for him on the undertaking suit. Their behavior warrants the severest condemnation, tarred as they are with the same stick that has besmirched their client.

The order to be entered hereon will be settled on notice.

NOTE.—Mr. William A. Sweetser, who argued in defense of Bloch on this motion, had no part in the transactions set forth in the above opinion. The admonition in the closing paragraph does not refer to him.